214 So.2d 133 (1968)
252 La. 756
STATE of Louisiana
v.
William BEER.
No. 49043.
Supreme Court of Louisiana.
June 28, 1968.
Rehearing Denied October 9, 1968.
*134 William A. Summer, III, Metairie, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for appellee.
BARHAM, Justice.
The defendant William Beer was charged by bill of information under LSA-R.S. 14:81 with the crime of indecent behavior with juveniles, a misdemeanor punishable by a fine of not more than $1000.00 or imprisonment for not more than two years in the parish prison or both. He was tried by a judge in the Twenty-second Judicial District Court, found guilty, and sentenced to serve one year in the parish jail.
Louisiana Constitution of 1921, Article 7 Section 41, provides:
"* * * All cases in which the punishment may not be at hard labor shall, until otherwise provided by law, be tried by the judge without a jury. * *"
The defendant did not request a jury trial, nor did he object to the trial before a judge alone, which was had in April of 1967. On May 20, 1968, more than one year later but prior to the hearing of this appeal, the Supreme Court of the United States handed down Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L. Ed.2d 491, which held that "* * * a crime punishable by two years in prison * * *" must allow for trial by jury.
The only two bills of exception perfected by the defendant have been abandoned on this appeal. His only remaining contention, that of denial of federal due process because he was not afforded a jury trial, may be reviewed by this court without a bill of exception, for if it is error, it is patent upon the face of the record.[1] With cognizance of Louisiana law, a mere inspection of the pleadings and proceedings evidences that William Beer was not offered a trial by jury. The State's argument that the defendant has waived review of this issue because he failed to request trial by jury begs the question. One cannot be required as a precedent to review to request that which could not be obtained and which was in fact denied by the Constitution and general laws. The only question for this court to resolve is whether the ruling in Duncan v. Louisiana is retroactive or prospective in effect.
Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, is the first of a number of recent Supreme Court decisions which have enunciated the retroactive or retrospective or prospective effect of other Supreme Court decisions.[2] Johnson *135 v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, stated:
"* * * the retroactivity or non-retroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved. * * *"
*136 Accepting the law as thus laid down in Johnson, we hold specifically that we may determine whether to apply the ruling of Duncan v. Louisiana retroactively to a case which was tried before the date of that decision but in which the conviction is not yet final since we have the matter before us on appeal. It was said in Linkletter v. Walker, supra:
"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. * * *"
We are called upon to determine under its own "merits and demerits" whether Duncan v. Louisiana should be given retroactive effect. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, set forth criteria for resolving the question:
"* * * (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. * * *"
It was pointed out in the dissent by Mr. Justice Harlan in Duncan v. Louisiana that beginning with Barron for use of Tiernan v. Mayor, etc., of City of Baltimore, 7 Pet. 243, 8 L.Ed. 672 (1833):
"* * * every member of the Court for at least the last 135 years has agreed that our Founders did not consider the requirements of the Bill of Rights so fundamental that they should operate directly against the States. * * *"
The United States Supreme Court has repeatedly held that the Fourteenth Amendment does not forbid the state courts' abridging the right of trial by jury in suits at common law as provided in the Seventh Amendment to the United States Constitution. Edwards v. Elliott, 21 Wall. 532, 88 U.S. 532, 22 L.Ed. 487, 492; Walker v. Sauvinet, 92 U.S. 90, 23 L.Ed. 678; Pearson v. Yewdall, 95 U.S. 294, 24 L.Ed. 436; Davidson v. New Orleans, 96 U.S. 97, 24 L.Ed. 616; Kelly v. Pittsburg, 104 U.S. 78, 26 L.Ed. 658; Iowa Central R. Co. v. Iowa, 160 U.S. 389, 16 S.Ct. 344, 40 L.Ed. 467. The United States Supreme Court has also stated that the Sixth Article of the Amendments contains no guarantee as to trial in the state courts. Ex parte Spies, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; Brooks v. Missouri, 124 U.S. 394, 8 S.Ct. 443, 31 L.Ed. 454; Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575, stated:
"* * * Consistently with that amendment [the Fourteenth,] trial by jury may be abolished. Walker v. Sauvinet, 92 U.S. 90, 23 L.Ed. 678; Maxwell v. Dow, supra: N. Y. Central R. Co. v. White, 243 U.S. 188, 208, 37 S.Ct. 247, 61 L.Ed. 667; Wagner Electric Mfg. Co. v. Lyndon, 262 U.S. 226, 232, 43 S.Ct. 589, 67 L.Ed. 961. * * *"
Thus it may be seen that consistently for more than a century the United States Supreme Court held that the Sixth Amendment guarantee of jury trial has no application to trials in state courts.
The Louisiana Constitution has forbidden the use of juries in all misdemeanor cases. Because of the holding in Duncan, however, the prosecution of those misdemeanor cases which may be defined as more than petty offenses has ground to a halt until legislative enactments can produce the machinery for trial of such offenses under the new standard. In the light of the present adverse *137 effect upon the administration of justice, it is certain that a retroactive application of the new standard would work an injustice of great magnitude on the State.
It may not be said that the right to a trial by jury is critical to liberty. Mr. Justice Cardozo as organ of the court in Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, stated:
"* * * The right to trial by jury and the immunity from prosecution except as the result of an indictment may have value and importance. Even so, they are not of the very essence of a scheme of ordered liberty. To abolish them is not to violate a `principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' * * *. Few Would be so narrow or provincial as to maintain that a fair and enlightened system of justice would be impossible without them. * * *"
As expressed by Mr. Justice Harlan in his dissent in Duncan,
"* * * The virtues and defects of the jury system have been hotly debated for a long time, and are hotly debated today, without significant change in the lines of argument.
"* * * But it simply has not been demonstrated, nor, I think, can it be demonstrated, that trial by jury is the only fair means of resolving issues of fact.
* * * * * *
"That trial by jury is not the only fair way of adjudicating criminal guilt is well attested by the fact that it is not the prevailing way, either in England or in this country. * * *"
Trial by jury has neither been proved to be the only way nor been proved to be the best way to seek truth. Therefore, when we inquire whether the new rule of criminal procedure expressed in Duncan will correct serious flaws in the fact-finding process and whether, if applied retroactively, it will assist in the determination of truth, our answer must be in the negative.
The Louisiana Constitution has dealt with the right to trial by jury in criminal prosecutions even more explicitly and particularly than does Amendment Six of the United States Constitution. Like that amendment, our Article 1, Section 9, provides that "In all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury * * *". However, our Constitution enlarges upon this right or privilege by specifying in Article 7, Section 41, the only instances when jury trial is not necessary. For these explicit constitutional provisions, seven men of the United States Supreme Court would substitute an inconcise, unresolved, and obscure standard as to when a jury trial may not be dispensed with.
Historically the states have fixed the limits of the right to trial by jury. These limitations have been defined and changed with a comprehension and appreciation of the need to weigh the burden of jury trials with the possible advantages which might inure from trial by jury. The dissent in Duncan was correct in its analysis that the majority opinion neither discovered a new, nor suddenly awakened from dormancy a well entrenched, constitutional guarantee or privilege or immunity. Mr. Justice Harlan said:
"* * * The point is rather that until today few people would have thought the exact location of the line [between offenses triable by jury and petty offenses] mattered very much. There is no obvious reason why a jury trial is a requisite of fundamental fairness *138 when the charge is robbery, and not a requisite of fairness when the same defendant, for the same actions, is charged with assault and petit theft. The reason for the historic exception for relatively minor crimes is the obvious one: the burden of jury trial was thought to outweigh its marginal advantages. Exactly why the States should not be allowed to make continuing adjustments, based on the state of their criminal dockets and the difficulty of summoning jurors, simply escapes me."
Finally the dissent concluded:
"* * * the Court has chosen to impose upon every State one means of trying criminal cases; it is a good means, but it is not the only fair means, and it is not demonstrably better than the alternatives State might devise."
Certainly the holding in Duncan v. Louisiana does not afford a standard critical to liberty, or a standard critical to the ascertainment of truth, or a standard designed to serve a purpose which requires a retroactive application of the new procedure. The State of Louisiana was entitled to rely upon the old standard, and a retroactive application of the new standard would indeed work a hardship and injustice upon the people of Louisiana. We will not give retroactive effect to Duncan v. Louisiana. Only those trials begun after May 20, 1968, are subject to the ruling of that decision[3]
The conviction and sentence are accordingly affirmed.
SUMMERS, J., concurs in the decree.
NOTES
[1] La.C.Cr.P. Art. 920: "The following matters and no others shall be considered on appeal: * * * (2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
[2] Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, overruled Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, and made the unreasonable search and seizure clause of the Fourth Amendment applicable to state trials. Linkletter v. Walker, 381 U. S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, in considering the effect of Mapp v. Ohio used the word "retrospective" advisedly and with a more limited definition than "retroactive". It stated that the rule of Mapp v. Ohio could not be purely prospective since Miss Mapp's conviction was reversed under the new standard. It further noted that the Mapp decision had been applied to cases still pending on direct review, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. The Linkletter decision was concerned only with whether the exclusionary principle announced in Mapp applied to state court convictions which had become final before rendition of the Mapp opinion. The court defined "final" as "* * * where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio". The court drew a distinction between the effect of rulings of invalidity upon convictions which are on direct review and the effect of subsequent rulings of invalidity upon prior final judgments when collaterally attacked. Linkletter stated: "Under our cases it appears (1) that a change in law will be given effect while a case is on direct review, [United States v.] Schooner Peggy [1 Cranch 103, 2 L.Ed. 49], and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set `principle of absolute retroactive invalidity' but depends upon a consideration of `particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and `of public policy in the light of the nature both of the statute and of its previous application.'"

In Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, decided at the next term of court, "retroactive" and "retrospective" were used interchangeably although the case before the court was a collateral attack upon a final judgment. Tehan refused to give retrospective application to the ruling in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, that an adverse comment by prosecutor or judge upon the defendant's failure to testify in a state criminal trial violated the Fifth Amendment privilege against compulsory self-incrimination.
Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, handed down at the last session of that same term of court, held that the right to counsel during interrogation, as enunciated in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.2d 874, should not have retroactive effect. Johnson ignored the nice differences discussed in Linkletter. The decision specifically provided that the Miranda and Escobedo rulings should not affect any trial begun before the respective dates of the decisions. Thus the standards laid down in these two decisions would be applicable to neither final nor reviewable convictions.
In Stovall v. Denno. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the matter under consideration involved a collateral attack upon a state criminal conviction under the constitutional errors enunciated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The court in Stovall used interchangeably the words "retrospective" and "retroactive", and finally held: "* * * We conclude, therefore, that the Wade and Gilbert rules [in regard to confrontation and identification of the accused without benefit of counsel] should not be made retroactive." (Emphasis supplied.) It is finally apparent that courts may determine whether a ruling is to be given prospective, retroactive, or retrospective effect, and may even delineate the exact line of demarcation: i. e., retroactive (1) as to all cases, or (2) as to judgments and convictions not final, or (3) as to trials
not begun, or (4) as to causes of action or cases which have not yet arisen.
[3] After this opinion was written but before it was handed down, the United State Supreme Court on June 17, 1968, in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, held that Duncan v. State of Louisiana "* * * should receive only prospective application", and that trials begun prior to May 20, 1968, would not be affected by that decision.