# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## KA 06-30 consolidated with KH 05-1098 & KH 05-1261

**STATE OF LOUISIANA**

**VERSUS**

**GREGORY JOHN RUIZ**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 02-1010
HONORABLE PAUL JOSEPH DEMAHY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

### AFFIRMED AND REMANDED WITH INSTRUCTIONS.

**James Edward Beal**
**Louisiana Appellate Project**
**P. O. Box 307**
**Jonesboro, LA 71251-0307**
**(318) 259-2391**
**Counsel for Defendant:**
**Gregory John Ruiz**

**J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**Counsel for Plaintiff:**
**State of Louisiana**

**Jeffrey J. Trosclair**
**Assistant District Attorney**
**16th Judicial District Court**
**Courthouse, 5th Floor**
**Franklin, LA 70538**
**(337) 828-4100**
**Counsel for Plaintiff:**
**State of Louisiana**

**SAUNDERS, Judge.**

On July 11, 2002, the State filed a bill of information charging Defendant, Gregory Ruiz of New Iberia, with possession of cocaine, second offense, in violation of La.R.S. 40:967 and La.R.S. 40:982, and distribution of cocaine, second offense, in violation of La.R.S. 40:967 and La.R.S. 40:982. Defendant's first trial ended in a mistrial. The jury in his second trial found him guilty as charged on March 16, 2005.

Subsequently, Defendant was billed and adjudicated to be a second habitual offender. The court sentenced him to five years at hard labor for possession of cocaine, second offense, and to thirty years for distribution of cocaine, pursuant to his adjudication as a habitual offender.

Defendant now seeks review of his convictions. His appellate counsel assigns a single error on appeal. We observe that the appeal has been consolidated with two pro se writs, in which Defendant argues a combined total of five errors.

Based on our analysis of Defendant's arguments, both counsel-filed and pro se, we vacate only the second-offense portions of Defendant's convictions and order the entry of convictions for the underlying offenses.

## FACTS:

Defendant sold cocaine to an undercover officer in Iberia Parish.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed on the face of the record for errors patent. After reviewing the record, we find that there are several errors patent involving the habitual offender adjudication and sentences. We find, however, that these errors are mooted by our finding, based on an assigned error, that the Defendant's convictions are vacated only as to his second offender status.

Therefore, Defendant's habitual offender adjudication and sentences are vacated and the case is remanded for further proceedings.

## ASSIGNMENTS OF ERROR:

As already noted, two pro se writs have been consolidated with Defendant's counsel-filed appeal. We will address the counsel-filed assignment first, then proceed to the pro se assignments.

## ASSIGNMENT OF ERROR (Appeal, 06-30):

Defendant argues that the "ends of justice require the granting of a new trial" due to the supreme court's ruling in *State v. Skipper*, 04-2137 (La. 6/29/05), 906 So.2d 399. The *Skipper* court held that allegations of prior offenses must not appear in charging instruments of subsequent offenses. *Id.*

In the present case, the State charged Defendant with second-offense possession of cocaine and second-offense distribution of cocaine, both in violation of La.R.S. 40:967 and La.R.S. 40:982. The bill of information contained allegations that Defendant had been convicted of prior drug offenses in 1995. Defendant argues that this was improper under *Skipper*.

As defense counsel observes, in *Skipper*, the defendant filed a successful motion to quash the bill, which charged him under La.R.S. 40:982. As the trial court's ruling included a declaration that the statute was unconstitutional, the prosecution appealed directly to the supreme court. In reaching its decision, the *Skipper* court explained:

> Unlike criminal statutes which contain their own enhancement provisions for multiple violations of the same criminal act, *La.R.S. 40:982 is a completely separate statute which does not in and of itself define a crime.* In addition, La.R.S. 40:982, like La.R.S. 15:529.1, is applicable to numerous different and unrelated felonies. Although all of the felonies must be prohibited under the Uniform Controlled

2

Substances Law in order for La.R.S. 40:982 to be applicable for sentence enhancement, the felonies are not required to be violations of the same criminal act. La.R.S. 40:982 does not transform the prior felonies into an element of the most recently committed offense, nor does the statute effect the grade of the offense, the trial procedure for the adjudication of that offense or the consequences, except to allow enhancement of sentence.

In Louisiana, sentencing is strictly a function performed by the trial judge. See La.C.Cr.P. art. 871(A) ("A sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty or upon a judgment of guilt.")(emphasis supplied). Thus, we find no rational basis or compelling state interest for a jury to be apprised of a defendant's prior conviction during the trial of the second or subsequent drug-related offense for purposes of sentence enhancement under La.R.S. 40:982. This sentence enhancement provision can still be enforced without presenting the allegations of a defendant's prior convictions to the jury before a determination of guilt for the instant offense is made.

CONCLUSION

For the foregoing reasons, we hold that La.R.S. 40:982 should be treated as a sentencing enhancement provision after conviction, like La. R.S. 15:529.1, and not as a substantive element of the presently-charged offense. Specifically, the allegations of the prior offense must not be placed in the charging instrument of the second or subsequent drug-related offense nor may evidence of the prior offense be presented to the jury determining the defendant's guilt or innocence in the trial of the second or subsequent drug-related offense for the purpose of sentence enhancement under La.R.S. 40:982.

*State v. Murray*, 357 So.2d 1121 (La.1978), and any appellate decisions, as discussed herein, which stand for the proposition that a prior conviction must be placed in the charging instrument of the second or subsequent drug-related offense or proved to the jury in order to enhance the sentence of a drug-related felony under La.R.S. 40:982, are hereby overruled.

So finding, we hold that the trial court properly granted the motion to quash the bill of information in this matter as the state misapplied La.R.S. 40:982 by placing the allegation of the prior offense in the bill of information. The ruling of the trial court on the motion to quash is AFFIRMED.

*Id.* at 416-17, (footnotes omitted) (emphasis added).

We observe that *Skipper*'s language raises the possibility that Defendant's convictions for second offenses under La.R.S. 40:982 constituted convictions for non-existent crimes. Defendant does not appear to have raised this specific issue below, and does not squarely present it on review. However, we observe that he attempted to bring *Skipper* to the trial court's attention at sentencing, in oral pro se remarks. As *Skipper* was rendered on June 29, 2005, and the sentencing hearing was conducted on August 8, 2005, the latter date was likely Defendant's earliest opportunity to raise *Skipper*. Further, the issue of conviction for a non-crime is discoverable by a mere inspection of the record. La.Code Crim.P. art. 920(2). We observe the Comments under La.Code Crim.P. art. 535, "Time to file motion to quash," which state, in pertinent part:

> (b) Paragraph A states the time for filing a motion to quash on fundamental grounds that are not waived by failure to urge them by a motion to quash. These grounds are:

> (1) The offense is not punishable under a valid statute.

> This is Ground (1) of Art. 532. It may also be urged as a ground for a motion in arrest of judgment under Art. 859(2), and is within the scope of appellate review without prior objection, under Art. 920(2), since it is an error discoverable by a mere inspection of the pleadings and proceedings and without the inspection of evidence.

Therefore, we will proceed with the analysis. However, to definitively state whether Defendant has been convicted of a non-crime, it is necessary to decide whether *Skipper* applies retroactively to the present case. When the *Skipper* ruling was issued, Defendant had been convicted and was waiting to be sentenced. The State argues *Skipper* should not apply retroactively, citing *State v. Beer*, 252 La. 756, 214 So.2d 133 (1968).

4

Our research has located no cases in which this aspect of *Skipper* has been discussed. In an unpublished case, *State v. Butler*, an opinion bearing docket number 05-297 (La.App. 3 Cir. 11/2/05), we recently discussed *Skipper*, although we did not address the retroactivity issue, or La.R.S. 40:982's apparent status as a non-crime. In *Butler*, we stated, "Defendant's conviction for possession of a controlled dangerous substance, second offense, is within the purview of *State v. Skipper*. Accordingly, potentially prejudicial other crimes evidence was put before the jury which constituted trial error in this case. However, this trial error is subject to a harmless error analysis." *Id*. at 12.

Thus, we found error, conducted a harmless error analysis, and affirmed the defendant's conviction for possession of a controlled dangerous substance, second offense. As previously mentioned, the opinion did not address retroactivity. In view of the information presented, we now find that the omission of that issue, and thus, the decision to affirm the defendant's conviction for second-offense possession of a controlled dangerous substance, was in error. We note that a writ application is pending before the supreme court in *Butler*; however, no action had been taken at the time this opinion was written.

In *State ex rel. Taylor v. Whitley*, 606 So.2d 1292 (La.1992), *cert. denied*, 508 U.S. 962, 113 S.Ct. 2935 (1993), the supreme court traced the evolution of United States Supreme Court cases addressing the retroactivity of new rulings to cases final at the time the new ruling was rendered, as well as those that were pending on direct review at the time the new ruling was issued.[1] In doing so, the court discussed Justice

---

[1] In *Griffith v. Kentucky*, 479 U.S. 314, 321, 107 S.Ct. 708, 712, n. 6 (1987), the Supreme Court defined finality of a conviction as "a case in which a judgment of conviction has been

(continued...)

Harlan's suggestion of a new test for retroactivity:

> In order to address the issue of retroactivity, we begin by tracing the evolution of the United States Supreme Court's decisions in this area. The Court began from the premise that the "federal constitution has no voice upon the subject" of retroactivity. *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court concluded "that the Constitution neither prohibits nor requires" that retroactive application be given to any new constitutional rule, and proceeded to hold that its decision in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 61 L.Ed.2d 1081 (1961), did not require retroactive application. In doing so, the *Linkletter* Court set forth a three-pronged analysis to determine retroactivity: (a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. In *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the *Linkletter* test was applied to final convictions, and convictions at various stages of trial and direct review. Nonetheless, the application of the *Linkletter* test led to confusion, and was criticized as creating "incompatible rules and inconsistent principles." *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1968) (Harlan, J. dissenting). In an attempt to resolve this problem, Justice Harlan suggested a new test in *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1970) (separate opinion of Harlan, J.).

> . . . .

> Accordingly, he proposed a general principle whereby "all constitutional errors not waived or harmless are correctable on habeas and by defining such errors *according to the law in effect when a conviction became final*." *Id*. at 692, 91 S.Ct. at 1179 (emphasis added). Under this general principle, new rules would not be given retroactive effect on collateral review, *although they would be applied to cases pending on direct review*. However, Justice Harlan created two exceptions in which he would give retroactive effect to new rules on collateral review. The first exception involved new substantive due process rules -- i.e., rules placing certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe. The second exception referred to new rules which required observance of "those procedures that . . . are implicit in the concept of ordered liberty" and altered our understanding of the "bedrock procedural elements" of a fair trial.

---

[1](...continued)
rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally decided."

. . . .

> In the next several years, the Court began to gradually move away from *Linkletter* and toward the analysis suggested by Justice Harlan. The Court began by adopting Justice Harlan's view that a new rule should be applied retroactively to all cases pending on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

*Id.* at 1294.

The Supreme Court, in *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716 (1987), held, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rules constitutes a 'clear break' with the past."

The *Taylor* court also discussed pertinent Louisiana court rulings on retroactivity:

> Turning now to our state law decisions on retroactivity, we find they have also recognized the principle that the constitution does not prohibit nor require courts to give retroactive application to criminal law decisions. *State v. St. Pierre*, 515 So.2d 769, 774 (La.1987). Our cases decided after *Linkletter* reflect the confused state of the law under that case.

> . . . .

> Subsequently, our cases have followed *Griffith v. Kentucky*, *supra*, and have applied new rules to cases pending on direct review or not yet final. *See State v. Sanders*, 523 So.2d 209 (La.1988); *State v. St. Pierre*, 515 So.2d 769 (La.1987). In fact, we recently applied the *State v. Cage* [583 So.2d 1125 (La.1991), *cert.denied*, 502 U.S. 874, 112 S.Ct. 211 (1991)] rule to a case pending on direct appeal at the time *Cage* was rendered. *State v. Smith*, 600 So.2d 1319, 1326 n. 5 (La.1992).

*Taylor*, 606 So.2d at 1296 (emphasis added).

7

The conviction in *Taylor* was final, and the rule at issue was not retroactively applied. However, we note two more recent cases in which the supreme court and second circuit, relying on *Griffith*, 479 U.S. 314, 107 S.Ct. 708, applied a new ruling to a case pending on appeal. *See State v. Naquin*, 00-291, 00-296 (La. 9/29/00), 769 So.2d 1170 and *State v. Ford*, 26,422 (La.App. 2 Cir. 9/21/94), 643 So.2d 293. We find the State's reliance on *Beer* is misplaced, since *Beer,* 252 La. 756, 214 So.2d at 133*,* belongs to the earlier *Linkletter* and *Stovall* line of jurisprudence. *Beer*, 214 So.2d at 135-36.

In light of the foregoing jurisprudence, we find that *Skipper* retroactively applies to Defendant's case. When *Skipper* was decided, Defendant had been tried and convicted and was awaiting sentencing. Clearly, his conviction was not yet final and the foregoing jurisprudence supports the retroactive application of *Skipper* to his case. Thus, we find that it was error for the State to charge the prior offense in the bill of information.

We note that in *Skipper,* the defendant was originally charged by bill of information with violating La.R.S. 40:967, and the state amended the bill to additionally charge a violation of La.R.S. 40:982. Thus, it appears the amended bill contained *both* charges. The trial court quashed the amended bill, and the supreme court affirmed that decision. If, indeed, the amended bill contained both charges, by affirming the trial court's ruling and quashing the amended bill, the supreme court agreed that both charges should be quashed, rather than the La.R.S. 40:982 charge alone, perhaps suggesting that La.R.S. 40:967 and La.R.S.982 are non-severable. In the past, the supreme court has held that only a *portion* of a bill which contained a duplicitous charge needed to be quashed, rather than the entire bill. *See State v. Coody*, 448 So.2d 100 (La.1984). Thus, the *Skipper* court's decision to uphold the

8

quashing of the amended bill implies that the supreme court may view La.R.S. 40:967 and La.R.S. 40:982 as non-severable, although we note that the court stated: "Unlike criminal statutes which contain their own enhancement provisions for multiple violations of the same criminal act, La.R.S. 40:982 is a completely separate statute which does not in and of itself define a crime." *Id.* at 416.

Thus, we choose to vacate only the second-offense portions of the convictions. One reason is that La.R.S. 40:982 contains no proscriptions against the most recent conduct charged, i.e. possession and distribution of a controlled dangerous substance. The statute states:

> A. Any person convicted of any offense under this part, if the offense is a second or subsequent offense, shall be sentenced to a term of imprisonment that is twice that otherwise authorized or to payment of a fine that is twice that otherwise authorized, or both. If the conviction is for an offense punishable under R.S. 40:966(B), R.S. 40:967(B), R.S. 40:968(B) or R.S. 40:969(B), and if it is the offender's second or subsequent offense, the court may impose in addition to any term of imprisonment and fine, twice the special parole term otherwise authorized.

> B. For purposes of this section, an offense shall be considered a second or subsequent offense, if, prior to the commission of such offense, the offender had at any time been convicted of any violation of this state, the United States, any other state of or any foreign country, relating to the unlawful use, possession, production, manufacturing, distribution, or dispensation of any narcotic drug, marijuana, depressant, stimulant, or hallucinogenic drugs.

La.R.S. 40:982.

Thus, La.R.S. 40:982 has no independent provisions that bear upon the most recent incident of possession and distribution that initiated the current proceedings, and upon which the current convictions partly rest. Further, the statute refers back to La.R.S. 40:967 and other substantive statutes. More than likely, it is for these reasons that the charging instrument cited La.R.S. 40:967, as well as La.R.S. 40:982. Considering that the statutes are separate from one another, that La.R.S. 40:982 has

no substantive provisions and no bearing upon the most recent conduct at issue, and that a substantive provision, La.R.S. 40:967, was also charged in relation to both counts, we find that while the convictions for a second offense under La.R.S. 40:982 should be reversed as convictions for non-crimes, the substantive portion of the offenses under La.R.S. 40:967 is severable from the non-crimes of second-offense possession and second-offense distribution.

It is well-settled that in cases where Louisiana courts have reversed convictions for insufficiency of the evidence, they have authority to order the entry of convictions for lesser-included offenses where the records support such lesser convictions. Similarly, we vacate the second-offense portions of the convictions, but order the entry of convictions for the more recent conduct, under La.R.S. 40:967. In the instant case, the jury's return of guilty verdicts for second offenses clearly required that it found him guilty of the more recent conduct, proscribed by La.R.S. 40:967.

We note *State v. Wells*, 01-1276 (La.App. 5 Cir. 3/26/02), 815 So.2d 1063, a pre-*Skipper* case that concluded that La.R.S. 40:982 was a sentencing enhancement provision. (*Skipper* cited *Wells* as part of its discussion of La.R.S. 40:982's jurisprudential history). In *Wells*, the defendant argued that it was improper for him to have been sentenced as a second offender under La.R.S. 40:982, since no evidence of his prior conviction was introduced at trial. The fifth circuit agreed and also noted that the jury had not returned a conviction for a second offense. Instead, the jury had convicted the defendant only of the more recent conduct, pursuant to La.R.S. 40:967. *Id.* at 1066. The defendant also argued it was prejudicial to have the prior offense in the charging instrument. Treating La.R.S. 40:982 as a mere sentencing enhancement provision, the *Wells* court held it was improper to include the predicate offense in the

bill. However, *Wells* applied a harmless error analysis and, ultimately, determined the error was harmless. Ultimately, the *Wells* court affirmed the conviction for possession of cocaine, but remanded for resentencing. *Id.* at 1073-74.

The *Wells* decision suggests that the La.R.S. 40:982 portion of second-offense drug conviction and the La.R.S. 40:967 portion of such a conviction are severable. If they were not, the *Wells* court necessarily would have voided the La.R.S. 40:967-based conviction before it, due to the lack of evidence relative to La.R.S. 40:982.

If the provisions are severable, then a conviction for the second-offense portion of such a conviction could be vacated, but the invalidity of the second-offense portion of the conviction would not prevent us from ordering the entry of convictions under La.R.S. 40:967, based upon the most recent conduct.

We also note another fifth circuit case which discussed a situation analogous to the present case:

> The defendant was originally charged with violating LSA-R.S. 14:84(1) and (4) and was subsequently convicted under both sections. As the constitutionally deficient provision of LSA-R.S. 14:84 is clearly severable from the remaining sections of the statute, the finding that one portion of the statute was unconstitutional did not affect the validity of the section of the statute under which the defendant was convicted. The Louisiana Supreme Court held in *State v. Williams*, 400 So.2d 575, 580 (La.1981) "[t]he unconstitutionality of one portion of the statute, however, does not necessarily render the entire statute unenforceable. If the remaining portion of the statute is severable from the offending portion, this Court often strikes only the offending portion and leaves the remainder intact." When a section of a law is stricken and the remaining sections are complete in themselves, and capable of being executed, wholly independent of the section which was rejected; and where there is no conflict in the penalties imposed and no confusion, the conviction of a defendant under a valid section will stand. *State v. Taylor*, 396 So.2d 1278 (La.1981); *State v. McCoy*, 395 So.2d 319 (La.1980); *City of New Orleans v. White*, 78 So. 745, 143 La. 487 (La.1918). Thus, it is only necessary for this court to determine if the evidence presented by the state was sufficient to prove the elements of LSA-R.S. 14:84(1) in order to affirm Tuscano's conviction in this matter.

11

*State v. Tuscano*, 492 So.2d 67, 68 (La.App. 5 Cir.), *writ granted*, 494 So.2d 1165 (La.1986), *on remand*, 520 So.2d 1311 (LaApp. 5 Cir. 1988) (footnote omitted).[2]

A footnote in *Tuscano* observed that the legislation enacting La.R.S. 14:84 contained "the standard severability clause." *Id.* at 68 n.1. We find that La.R.S. 40:982 and La.R.S. 40:967 are inherently severable because they are separate statutes and are of different genera, as the former is a sentencing enhancement provision, while the latter defines substantive offenses.

Further, we find that *Tuscano* and *Wells* are sufficiently analogous to the present case to indicate that we may view the La.R.S. 40:982 second-offense convictions as severable from the portions of the convictions that relied upon La.R.S. 40:967 and the more recent conduct. Also, viewing *Tuscano* alongside courts' established authority to vacate improper convictions and order the entry of convictions for lesser-included offenses, we vacate the convictions for second-offense possession of cocaine and second-offense distribution of cocaine under La.R.S. 40:982, but order the entry of a conviction for possession of cocaine and a conviction for distribution of cocaine, both in violation of La.R.S. 40:967.

Because we have elected to affirm the convictions as La.R.S. 40:967 violations, the harmless error issue must still be resolved, as the jury was exposed to the fact of Defendant's criminal history. As noted above, a similar scenario existed in the *Wells* case. That court decided both that a harmless-error analysis applied and that the error was ultimately harmless, due to the strong evidence against defendant, regarding the

---

[2]The supreme court remanded the case to the fifth circuit for reconsideration in light of *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532 (1931). On remand, the fifth circuit found *Stromberg* distinguishable and affirmed the defendant's conviction and sentence pursuant to La.R.S. 14:84(1).

more recent conduct at issue.  In *Wells*, the police found fifty rocks of crack cocaine in the defendant's pants.  *Wells*, 815 So.2d 63.

Here, Defendant sold cocaine to an undercover police officer.   Thus, we find that in the present case, as in *Wells*, the State presented strong evidence regarding the violation of La.R.S. 40:967.  Therefore, we find that the error was harmless.

**PRO SE ASSIGNMENTS (CONSOLIDATED WRITS):**

As noted earlier, Defendant has submitted two pro se writs, bearing docket numbers 05-1098 and 05-1261, for review.  Both writs have been consolidated with his appeal.

**05-1098**

**ASSIGNMENTS OF ERROR NOS. 1 & 2, & SUPPLEMENTAL ASSIGNMENT:**

In his first assignment of error, Defendant complains that appointed trial counsel was substituted, so that he received new counsel three weeks before trial.  He argues that counsel did not have sufficient time to prepare for trial, in contrast to the prosecutor, whom Defendant alleges had three years to prepare.  In a supplement to this writ, Defendant asks this court to order a copy of a "Faretta hearing" held on March 14, 2005, to help in the evaluation of his arguments.  Defendant observes that the hearing was held because he was nervous that his trial counsel was not prepared for trial.  Further, he states, "The main issue is she lied to me, telling me she was an experienced trial attorney."   Defendant alleges a number of deficiencies in trial counsel's performance or conduct, including incompetence, lack of diligence, and misrepresentation.  Thus, the crux of his argument appears to focus upon counsel's actions, rather than upon any desire to have represented himself.   We find

13

Defendant's arguments are in the nature of an ineffective assistance of counsel claim, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Also, arguments that an attorney has lied to his client invariably involve conversations or statements that would not typically appear in a trial record. Therefore, we hold that these arguments are to be deferred to the post-conviction process, where Defendant will have an opportunity to develop the record regarding trial counsel's actions.

If Defendant does have concerns more directly related to *Faretta*, we hold that they are considered preserved for the purposes of post-conviction review, as it appears that any such issues would be factually intertwined with Defendant's *Strickland* concerns.

## ASSIGNMENT OF ERROR NO. 3:

In the third assignment in this writ, Defendant complains that a pro se motion to suppress filed by him was never heard. When a defendant proceeds to trial without obtaining rulings on his pre-trial motions, such motions are considered waived. *State v. Fletcher*, 02-707 (La.App. 5 Cir. 12/30/02), 836 So.2d 557, *writ denied*, 03-409 (La. 10/10/03), 855 So.2d 334; *State v. Pratt*, 32,302 (La.App. 2 Cir. 9/22/99), 748 So.2d 25.

In the present case, the record reflects that Defendant's motion to suppress was continued without date, on motion of his counsel, on February 24, 2005. Our review of the record indicates that Defendant did not attempt to raise the motion again until the hearing on his motion for new trial on August 8, 2005. At said hearing, the trial court stated that there was no basis for the motion to suppress because police had obtained cocaine directly from Defendant in a drug transaction, thus supporting the

distribution charge, and that police obtained other cocaine evidence when Defendant abandoned it at the time of his arrest.

We find that there is no need to conduct a review of the trial court's cursory assessment of the merits. For the purposes of appellate review, the motion was waived when Defendant proceeded to trial without obtaining a ruling. Therefore, this assignment lacks merit.

**05-1261:**

In this writ, Defendant sets out three assignments of error.

**ASSIGNMENTS OF ERROR NOS. 1-3:**

Because the first and third assignments focus upon Defendant's arraignment, we will discuss them together. The second assignment is a claim that his Due Process rights were violated. The writ does not clearly allege the manner of the violation. However, we find the assignment also relates to Defendant's arraignment, since the body of Defendant's "conclusion" focuses upon that proceeding.

Defendant claims he was never arraigned. He acknowledges that the minutes reflect that he was arraigned, but states he is "unaware of such a hearing." He claims that the transcript would show that no arraignment occurred, but that he has been unable to obtain a copy of the transcript.

The relevant provision, La.Code Crim.P. art. 555, states:

> Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.

As noted above, the minutes of court show that Defendant was arraigned via audio-visual telecommunication, as authorized by La.Code Crim.P. art. 551(B).

15

Although, as Defendant observes, the record does not contain a transcript of the proceeding, we note other support for the fact that Defendant was arraigned. The record contains both minutes and a transcript for a proceeding held on November 23, 2004. Urging a "Motion to Dismiss" at that time, Defendant acknowledged that an arraignment proceeding had occurred, but argued he had a hearing problem and did not understand what was going on at the arraignment:

MR. RUIZ:

A      Because a lot of the proceeding hearings, I didn't hear what went on. When they arraigned me, I never got a subpoena to be arraigned. I didn't know I was being arraigned until after I was arraigned. I didn't know what I was charged with. I had to send my daughter to the courthouse to get a copy of the Bill of Information. Okay. If they wouldn't have told me after I was out of here that I was arraigned, I wouldn't have know what happened.

THE COURT:      All right. So on the Motion to Dismiss, your complaint is that you weren't informed as to what was going on?

We observe that Defendant's written "Petition to Dismiss" also acknowledged that an arraignment was conducted, but argued that he did not understand the proceedings. The trial court denied the motion, finding that Defendant had not been prejudiced, as a not guilty plea was entered on his behalf, Defendant went to trial, and obtained a mistrial.

In an earlier, unsigned, "Motion to Dismiss," filed on November 31, 2003, Defendant complained, "I haven't been brought upon [sic] my said case *since my Arraignment on said date of August 13, 2002*." (Emphasis added).

We note another acknowledgment by Defendant that an arraignment occurred. In a writ application to this court, Defendant sought review of the denial of his

16

Motion to Dismiss. He implicitly acknowledged that an arraignment had occurred when he argued that because of his poor hearing, he could not understand the proceedings. We denied the writ, stating, "The Defendant fails to prove he is entitled to relief." *State v. Ruiz*, an unpublished opinion bearing docket number 04-1587 (La.App. 3 Cir. 12/10/04).

We find that the argument that no arraignment occurred is different than the argument that one was held, but Defendant did not understand the proceedings. The record contains multiple motions attacking the arraignment on one of these grounds or the other, and at times conflating the two. However, the language of Defendant's current assignments contend that no arraignment occurred. He asks this court to order a transcript of the proceedings for the arraignment date, August 13, 2002, but it is not clear how he expects such a transcript to further his argument. He does not allege any prejudice; the minutes indicate that he was represented by counsel at arraignment, that a not guilty plea was entered, and that his right to trial by jury was reserved. He was represented by counsel at both of his trials, and was able to secure a mistrial in the first. Thus, even if there was some defect in the arraignment, we find that Defendant has failed to show that any prejudice resulted.

For the reasons listed above, we find that contrary to Defendant's current assertions, the lower court held an arraignment. The argument that he did not understand the arraignment proceedings is not before this court.

For the reasons discussed, these assignments lack merit.

**CONCLUSION:**

Pursuant to *Skipper*, La.R.S. 40:982 does not state a substantive crime. However, the second-offense portions of the convictions are severable from the

17

portions of the convictions that relied upon the more recent criminal conduct, pursuant to La.R.S. 40:967. Further, although it was error under *Skipper* to expose the jury to the fact of Defendant's prior conviction, said error was harmless because of the strong evidence regarding the more recent criminal conduct at issue, i.e., Defendant's sale of cocaine to an undercover officer.

Therefore, Defendant's convictions for second-offense possession and second-offense distribution of cocaine and the attendant sentences, including the adjudication and sentence under La.R.S. 15:529.1, are vacated. However, we order the entry of convictions for the lesser offenses of possession of cocaine and distribution of cocaine, both in violation of La.R.S. 40:967. The case is remanded for further proceedings, in accordance with this opinion.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**