# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 06-850


**STATE OF LOUISIANA**

**VERSUS**

**TODD VINCENT EDWARDS**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 04-1111
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## JOHN D. SAUNDERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge,  John D. Saunders, and Billy Howard Ezell, Judges.

## VACATED AND REMANDED IN PART, AND REVERSED IN PART.

Laurie A. White
Laurie  White & Associates, LLC
633 Carondelet Street
New Orleans, LA 70130
(504) 525-1020
Counsel for Defendant:
Todd Vincent Edwards

Jeffrey J. Trosclair
Assistant District Attorney
St. Mary parish Courthouse
Franklin, LA 70538
(337) 828-4100
Counsel for Plaintiff:
State of Louisiana

**SAUNDERS, Judge.**

On July 14, 2004, the Defendant, Todd Vincent Edwards, was charged by bill of information with the following offenses: count one - possession of a controlled and dangerous substance, Schedule II, more than 28 grams, but less than 200 grams, within a drug-free zone, a violation of La.R.S. 40:967(F)(1)(a) and 40:981.3, as a second or subsequent offender, having been previously convicted on February 1, 1993, in East Baton Rouge Parish, Docket No. 3-91-918, for possession of cocaine, a violation of La.R.S. 40:982; and, count two - conducting a financial transaction involving proceeds known to be derived from a violation of La.R.S. 40:966, *et seq.*, a violation of La.R.S. 40:1049[1].

On August 9, 2004, the Defendant entered a plea of not guilty to the charges. The Defendant then filed a motion to strike improper language from the bill of information, which was subsequently denied on May 5, 2005. The same day, he filed a motion to waive a trial by jury, which was granted, and a bench trial was held on May 18, 2005, in which the Defendant was found guilty, as charged.

The Defendant subsequently filed a Motion for New Trial. However, his motion was denied on December 12, 2005, and he was sentenced to serve ten years at hard labor on count one, and five years at hard labor on count two, with credit for time served awaiting disposition; the sentences were to run concurrently. The State filed a multiple offender bill following sentencing. However, at the time of this writing, no further action has been taken on the multiple offender bill. The Defendant now appeals his convictions and sentences setting forth three assignments of error.

---

[1]Currently a violation of La.R.S. 40:1041.

## FACTS:

Detective Chad Hazelwood of the New Iberia Police Department received information about the Defendant, a/k/a B.R. or Baton Rouge, from confidential informants for about ten years which indicated that the Defendant was transporting drugs from Baton Rouge, Louisiana to New Iberia, Louisiana for street sale. The Defendant was the center of an investigation on May 22, 2004, and Detective Hazelwood, along with Detective Barnett, were involved in a mobile surveillance assigned to prosecute the Defendant. The detectives received information that the Defendant had been conducting illegal narcotic activity at an abandoned residence located at 506 Corrine Street. The area was known to have a high rate of drug trafficking. Officer Scott Davis, a narcotics investigator, along with Sergeant Adcock, devised a plan that involved several officers placed in different locations to cover the area and wait for the Defendant's arrival. Officer Davis was stationed in the brush along Corrine Street, where he had a visual of the Defendant during the operation. Detective Defelice was stationed in the grass behind the house.

After the Defendant arrived on the scene, Officer Davis and Detective Defelice witnessed what appeared to be the Defendant making a few narcotics exchanges and watched him store narcotics under the house and in the pipe of a metal clothesline. As officers moved in on the scene, the Defendant initially fled, but then ran toward Detective Hazelwood, who ordered him down to the ground and arrested him.

Approximately three hundred dollars were seized from the Defendant's person; however, no drugs or weapons were found on him. Officer Davis retrieved plastic

2

bags from inside a metal pipe and from underneath the residence, which were tested and determined to both contain crack cocaine.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, the Defendant argues that he was denied his right to due process of law, as there was insufficient evidence to support the guilty verdict. As will be discussed below, there is an error patent in this case which will require that the Defendant's conviction for possession of more than 28 grams but less than 200 grams of cocaine, second offense, be vacated and a conviction for possession of more than 28 grams but less than 200 grams be entered. We will first address the sufficiency of the evidence, as has been required by the supreme court, even in situations where a reversible trial error exists:

> The court of appeal reversed relator's conviction of DWI, third offense, based on the absence of evidence that relator knowingly waived his right to a jury trial.
>
> Nevertheless, the court of appeal erred in pretermitting relator's contention that the evidence was insufficient to prove the validity of the earlier convictions, which is an essential element of the charged crime. If relator prevails on these assignments of error, he is entitled to reduction of the grade of the charged offense and cannot be retried for the more serious crime. *State v. Johnson*, 541 So.2d 818 (La.1989).
>
> Accordingly, the judgment of the court of appeal is set aside insofar as the judgment pretermitted a ruling on the sufficiency of the evidence. The case is remanded to the court of appeal to review the sufficiency of the evidence of the earlier convictions. If one or more of the earlier convictions was not proved beyond a reasonable doubt, the court of appeal should discharge relator accordingly and order retrial only on the lesser grade of the charged offense.

*State v. Morris*, 615 So.2d 327, 328 (La.1993) (footnote omitted).

## Count 1

3

The relevant statutes as to count one are: La.R.S. 40:967(F)(1)(a) and 40:981.3.

Louisiana Revised Statutes 40:967(F)(1)(a) reads:

> Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.

Louisiana Revised Statutes 40:981.3, at the time of the offense, stated in pertinent part:

> A. (1) Any person who violates a felony provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.

School property is defined in La.R.S. 40:981.3(C)(2) as ". . . all property used for school purposes, including but not limited to school playgrounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and recreational areas administered by the office of state parks."

In making his argument, the Defendant alleges, first, that the State failed to prove that the crime occurred in a drug free zone. The Defendant contends that the State did not assert or prove that the area referred to as "Bunk Johnson" was a park or recreational area administered by the Louisiana Office of State Parks.

The bill of information indicates that the Defendant possessed cocaine within a drug-free zone, Bunk Johnson Recreational Park. At trial, Detective Hazelwood testified that he used a roller tape used by traffic investigators to measure the distance from where the Defendant was arrested and the Bunk Johnson Recreational Park.

According to Detective Hazelwood, the total measurement was less than one thousand feet; the point of arrest was ten feet from where the narcotics were found. However, as stated by the Defendant, no evidence was introduced at trial regarding whether Bunk Johnson was a park or recreational area administered by the Louisiana Office of State Parks, nor was there any evidence that proved the facility is used or operated by the City of New Iberia, a political subdivision of the State, as a playground or recreational facility as required by La.R.S. 40:981.3. Without any evidence regarding same, we find that the State failed to prove this essential element of the crime.

Next, the Defendant argues that the State failed to prove that he was a second or subsequent offender. More specifically, the Defendant avers that the State failed to offer any documents other than a certified copy of the bill of information and minute entry from East Baton Rouge Parish of his prior conviction as proof that the person named in the East Baton Rouge Parish bill of information was the same person involved in the instant litigation. The Defendant complains that there are no fingerprints in the bill of information to identify the Defendant as the same person in the East Baton Rouge Parish bill of information. The Defendant's charge as a second or subsequent offender in the bill of information is an error patent and a discussion of same is discussed therein.

The Defendant further argues that the State failed to prove that he was in possession of narcotics. More specifically, the Defendant is critical of the three police officers that testified about their involvement in the surveillance of the Defendant. First, the Defendant complains that Detective Hazelwood did not see any of the alleged narcotics transactions, nor did he see the Defendant store the drugs

5

underneath the house or in the pipe. Although the record supports the Defendant's allegation, it also indicates that Officer Davis and Detective Defelice were both in a position that allowed them to visualize the Defendant during the surveillance.

Next, the Defendant points out that no drugs were found on his person when he was apprehended by Detective Hazelwood. Although the Defendant had no drugs on his person, Officer Davis and Detective Defelice both observed the Defendant remove something from his crotch area and place something underneath the house and in the pipe of the clothesline. The items retrieved from the underneath the house and the pipe were later tested and were determined to be crack cocaine. Officer Davis testified that he continued his visual surveillance of the Defendant after he stashed the narcotics and that no other person was seen near the areas where the Defendant had stashed the narcotics. Further, Detective Defelice testified that he never lost sight of the Defendant and was positive that the man that was apprehended, the Defendant, was the same man that had placed the narcotics underneath the house and in the pipe.

With regard to Officer Davis' testimony, the Defendant complains that Officer Davis admitted that he saw only what he believed to be narcotics transactions and asserts that the Defendant simply could have been shaking hands in the transaction. Because none of the alleged participants were stopped and questioned, the Defendant maintains that no evidence was offered to support the fact that these transactions occurred. Officer Davis described the suspect transactions as follows:

> On two different - - at two different points, they had another black male subject that would - - that walked up to Mr. Edwards, made contact with him; Mr. Edwards walked to the back of the house, looked around as if checking the area, making sure everything was okay, bend down, picked up an item, fooled around in the pipe where the crack was later located, and then walked back up into the middle of the yard, not

6

actually going all the way to the street, and very quickly, very easily, it appeared that he exchanged something with the black male subject.

Q.  In the court - - based on your training and experience as a Narcotics Officer, what did you - - what did this - - what did that transaction - - those transactions appear to be?

A.  It appeared to be an illegal narcotics transaction.


Considering Officer Davis' detailed description of the two transactions and his experience as a narcotics investigator, along with the fact that narcotics were found in the areas visited by the Defendant during the transactions, we find that Officer Davis' testimony adequately supports the Defendant's conviction with regard to possession of narcotics.

Next, the Defendant is critical of Detective Defelice's testimony wherein he describes the Defendant's activity in the areas where the narcotics were found because Detective Defelice admitted that the area he was observing was dark, and he was unable to see the details of the Defendant's facial features. Detective Defelice described what he could visualize from his location as follows:

Q.  You were lying on the ground or were you crouched on the ground?

A.  I was chest on the ground with my head positioned to where I could see.

Q.  It was very dark behind there, was it not?

A.  Yes, it was dark.

Q.  And when you were crouched on the ground looking, you could see a figure of a man?

A.  I could see his clothing; I could see what color his clothing were and I could tell it was a black male.

7

Q. You could not see his face, you could not see any facial features?

A. I couldn't see his detailed features, no.

Q. You could not see that?

A. No.

Q You could see that he was a certain build, he was a black person; at the point that you were still back there, that's about what you knew?

A. Correct.

Although Detective Defelice admits that the area was dark, he also testified that he never lost sight of the Defendant and had no doubt that the man he observed while behind the house was the Defendant who was arrested. Detective Defelice added that he was about thirty feet from the Defendant and was looking directly at him during his surveillance. Lastly, Detective Defelice further described what he could see as follows:

Q. But once - - I take it that a person behind the house is in the most shadow that they have there?

A. Right. But the closer I got to him, correct, was when I started to actually identify him, I knew who he was - - actually started to see his face; and he never saw me.

Q. So when the person was bending over and putting something in there, all you could see was the dark figure that was bending over?

A. I could see what he was wearing, too. I could see that much and I could tell that he was holding something in his hands. I mean, I was able to see him not in great detail, but I was able to see a good bit, not just a shadow.

8

Considering the entirety of Detective Defelice's testimony, we find that he adequately identified the Defendant as the man who stashed the narcotics and who was subsequently arrested.

Finally, the Defendant complains that no information was presented at trial to establish the reliability of the confidential informants who provided tips to Detective Hazelwood and that none of them were produced to connect the Defendant to any drug transactions. Detective Hazelwood testified as to the reliability of his informants as follows:

Q. The information you received over this period of time, you received that information from confidential informants?

A. Yes, sir.

Q. Approximately how many different informants you with information with regard to BR of Baton Rouge's activity?

A. Do you want an estimate number? I mean - -

Q. The best that you can give.

A. About a dozen, I guess it could be.

Q. And had those informants proven to be reliable in the past?

A. Yes.

Q. Had they provided you with information that had led to a narcotics arrests?

A. Yes, sir.

Q. Arrests that led to convictions?

A. Yes, sir.

Q. So those informants had been proven reliable with regard to the information that they provided to you?

A. Yes, sir.

We find that the Defendant's complaint has little significance with regard to the element of possession in this case and is simply without merit.

Although the Defendant does not complain of the lack of conclusive DNA evidence, we note that all of the plastic bags containing the cocaine were swabbed for possible contact DNA and that some human DNA was obtained from plastic bags. The laboratory, however, was unable to obtain a DNA profile for comparison, and thus, could neither include nor exclude anyone, including the Defendant. Also, no latent prints with observable ridge detail were developed from the bags – no fingerprints were found.

Despite the lack of DNA evidence and fingerprints, we find that the evidence adduced at trial was sufficient with regard to the element of possession, as Detectives Davis and Defelice both identified the Defendant when he arrived at the location, and they maintained a visual on the Defendant until he was arrested.

In conclusion, we find that although the State did not prove all the elements essential of La.R.S. 40:981.3 regarding possession in a school zone, the remaining offense of possession of a Schedule II substance, in violation of La.R.S. 40:967(F)(1)(a), is supported by the evidence. However, the validity of that conviction hinges upon the treatment of an error patent, which will be discussed further.

**Count 2**

The next alleged error is included in the first assignment of error and pertains to the second count, conducting a financial transaction involving proceeds known to be derived from a violation of La.R.S. 40:966, *et seq.*, a violation of La.R.S. 40:1049. Louisiana Revised Statutes 40:1049 reads, in pertinent part:

A. It is unlawful for any person knowingly or intentionally to conduct a financial transaction involving proceeds known to be derived from a violation of R.S. 40:966 et seq. when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law.

The Defendant argues that no evidence was presented by the State to prove that the money confiscated from his person was the result of drug proceeds. The Defendant adds that no controlled buys were conducted, no drugs were seized from his person, no other person was stopped who possessed drugs, and no confidential informants were present at trial. Further, the Defendant maintains that $305.00 is not an unusually large sum of money and does not automatically prove a sale of narcotics.

Detective Davis testified that other than the two transactions he saw which are described above, he had no proof that the money found on the Defendant was from drug proceeds. He further testified that he did not see the other person put drugs in his pocket, nor did he see the Defendant counting out money.

We were unable to find any jurisprudence which has applied this statute to the evidentiary facts of the case. However, because no money was seen changing hands, and because $305.00 is not an unusually large amount of cash, we find that the evidence is insufficient to find the Defendant guilty of this charge. Therefore, we overturn the Defendant's conviction for count two, transaction involving proceeds from a drug offense, in violation of La.R.S. 40:1049.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

The Defendant was charged in the bill of information as a second or subsequent offender in violation of La.R.S. 40:982. On August 16, 2004, defense counsel filed a Motion to Strike the language regarding the prior conviction from the bill of information. The motion was denied at a hearing held on April 5, 2005.

In *State v. Skipper*, 04-2137, pp. 25-26, (La. 6/29/05), 906 So.2d 399, 416-17, the supreme court held:

> [W]e hold that La. R.S. 40:982 should be treated as a sentencing enhancement provision after conviction, like La. R.S. 15:529.1, and not as a substantive element of the presently-charged offense. Specifically, the allegations of the prior offense must not be placed in the charging instrument of the second or subsequent drug-related offense nor may evidence of the prior offense be presented to the jury determining the defendant's guilt or innocence in the trial of the second or subsequent drug-related offense for the purpose of sentence enhancement under La. R.S. 40:982.
>
> *State v. Murray*, 357 So.2d 1121 (La.1978), and any appellate decisions, as discussed herein, which stand for the proposition that a prior conviction must be placed in the charging instrument of the second or subsequent drug-related offense or proved to the jury in order to enhance the sentence of a drug-related felony under La. R.S. 40:982, are hereby overruled.
>
> So finding, we hold that the trial court properly granted the motion to quash the bill of information in this matter as the state misapplied La. R.S. 40:982 by placing the allegation of the prior offense in the bill of information. The ruling of the trial court on the motion to quash is AFFIRMED.

At the time *Skipper* was rendered, the Defendant had been convicted and was awaiting sentencing. In *State v. Ruiz*, 06-30, 05-1098, 05-1261 (La.App. 3 Cir. 5/24/06), 931 So.2d 472, this court found *Skipper* retroactively applicable to the defendant who had been convicted, but not sentenced at the time *Skipper* was decided. In *Ruiz*, this court chose to vacate only the second-offense portions of the convictions because "La.R.S. 40:982 contains no proscriptions against the most recent conduct charged, i.e. possession and distribution of a controlled dangerous

12

substance." *Id.* at 479. This court felt that the substantive portion of the offenses were "severable from the non-crimes of second-offense possession and second-offense distribution." *Id.* at 479. To address the jury's exposure to the defendant's criminal history, this court conducted a harmless error analysis and concluded that the strong evidence in the case, i.e., the defendant's act of selling cocaine to an undercover police officer, made the error harmless.

Our disposition of *Ruiz* stated:

> Therefore, Defendant's convictions for second-offense possession and second-offense distribution of cocaine and the attendant sentences, including the adjudication and sentence under La.R.S. 15:529.1, are vacated. However, we order the entry of convictions for the lesser offenses of possession of cocaine and distribution of cocaine, both in violation of La.R.S. 40:967. The case is remanded for further proceedings, in accordance with this opinion.

*Ruiz*, 931 So.2d at 484.

Our Louisiana Supreme Court granted writs in the *Ruiz* case and affirmed our decision. In that opinion, the Court indicated that harmless error analysis was proper when dealing with evidence of a prior crime appearing on the bill of information when it stated:

> [T]he erroneous treatment of La. Rev. Stat. 40:982 as a substantive element of the offense, thus placing the defendant's prior offenses in the charging instrument and before the jury, does not necessarily render the criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. . . .The erroneous introduction of evidence of other crimes is a trial error, which may be qualitatively assessed in the context of the other evidence to determine whether its admission was harmless beyond a reasonable doubt. (Citation omitted.)

*State v. Ruiz*, 06-1755, p.4 (La. 4/11/07) __ So.2d __.

In this case, the Defendant was observed by two officers removing something from his crotch area and placing it underneath the house and in the pipe of a clothesline. These items were later tested and found to be crack cocaine. Therefore,

13

we find that the judge's exposure to the Defendant's criminal history, in this case, was harmless as well.

Thus, in accordance with *Ruiz*, we vacate the Defendant's conviction and sentence for possession of more than 28 grams, but less than 200 grams of cocaine, second offense, and enter a conviction for the lesser offense of possession of more than 28 grams, but less than 200 grams of cocaine. Further, we remand the case for resentencing on this conviction.

**ASSIGNMENT OF ERROR NO. 2:**

In this assignment of error, the Defendant argues that the State failed to give notice of its intent to introduce evidence of highly prejudicial and speculative other crimes evidence against him at trial in violation of La.Code Evid. art. 404(B), including alleged prior drug transactions. More specifically, the Defendant contends that the incidents, innuendo, and assumptions related by police at trial were not charged in the indictment and were offered to prejudice the trier of fact as prior bad acts, falling with the scope of La.Code Evid. art. 404(B). Additionally, the Defendant maintains that the State did not give notice of its intent to introduce alleged prior acts, nor was a *Prieur* hearing conducted in this case.

Article 404(B) reads, in pertinent part:

> **B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

14

In *State v. Brewington*, 601 So.2d 656, 657 (La.1992), the supreme court stated:

> This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. *State v. Boyd*, 359 So.2d 931, 942 (La.1978); *State v. Clift*, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940). *State v. Haarala*, 398 So.2d 1093, 1097 (La.1981).

The Defendant's assignment of error centers around the testimony of Detective Hazelwood. First, the Defendant objects to Detective Hazelwood's testimony that he had been receiving information about the Defendant from confidential informants for about ten years. When Detective Hazelwood was asked how long he had been receiving information, the Defendant objected as follows:

Q. Do you recall approximately how long you had been receiving that information?

MR. PEREZ:

Well, Judge, I am going to have to object to clearing it [sic] being hearsay. Not only hearsay but hearsay that makes an allegation strictly that my client has been transporting drugs.

I think if you go - - I understand that they may be able to go up to certain types of background in order to, you know, explain why he did something. But I don't believe that they can then go off into slanderous accusations that they heard from somebody on the street.

I object to the line of questioning and to the answers.

MR. VINES:

Certainly, Judge, as you are aware, we are also trying a Motion to Suppress. One of the things we have to be able to show during this is to

15

establish probable cause as to why the Officers stopped and detained Mr. Edwards, and ultimately searched Mr. Edwards, and seized evidence off of Mr. Edwards' person - - is that mind set that the officers.

That information that they had, that particular suspicion - - to be able to make that stop, and detention, and ultimate search and seizure of evidence.

I think it is a perfectly legal line of questioning.

MR. PEREZ:

Well, if this was all that was happening that night, I would say that - -

THE COURT:

- - you have made your objection to hearsay. It is overruled for the basis stated by Mr. Vines and in addition I think it is clearly established in the jurisprudence that Police Officers have leeway by way of res gestae, explaining as to why they did what they did and when they did what they did. So overruled.

In addition to that, sir, we are trying the Motion to Suppress.

**BY MR. VINES:**

Q.    How long had you been receiving information?

A.    Probably ten years.

Q.    The information that you received - -

MR. PEREZ:

Excuse me. No, Judge, we are going to go back ten years in order to have probable cause in an arrest that was made inside here - - we are going to go back ten years in order to begin that probable cause?

THE COURT:

That was a very specific question. I [sic] going to overrule it.

I am going to him some latitude on developing the case, sir.

That was a specific question; one answer.

We will see where we are.

16

Overruled.

Next, the Defendant complains of Detective Hazelwood's testimony that about a dozen confidential informants provided information to him. However, the Defendant made no objection to this testimony at trial.

Finally, the Defendant objects to Detective Hazelwood's testimony about an incident involving an investigation of the Defendant prior to May 22, 2004. Detective Hazelwood testified that he had received information which indicated that the Defendant was transporting drugs for street sale to New Iberia. When the Defendant was observed loitering in front of Brenda's Diner, Detective Hazelwood tried to stop him. A foot pursuit ensued, but Detective Hazelwood was unable to apprehend the Defendant. Detective Hazelwood further testified that a vehicle registered to a female in Baton Rouge, Louisiana located in a nearby parking lot was seized, as well as drug paraphernalia found on a black male who was sitting in the passenger's seat. The passenger was subsequently taken in for questioning.

The Defendant objected to this testimony as follows:

MR. PEREZ:

Judge, we are going a little - - if this was not Mr. Edwards in the vehicle and this was somebody in the car that did not belong to Mr. Edwards, then when are we going to get anywhere close to starting to try this case.

We are going back ten years - - we have been given no 40B [sic] - -

THE COURT:

Overruled. We fast-forwarded. We are at Brenda's Diner.

MR. PEREZ;

Uh huh.

17

THE COURT:

He still has the right to explain what he did and why he did it.

MR. PEREZ:

You know, if somebody goes out and robs bank - -

THE COURT:

- - that's argument. You have made your objection. I have ruled. It is noted for the record.

As stated by the trial court upon the Defendant's first objection to this testimony, the purpose of the line of questioning was to establish probable cause. In addition to a trial on the merits, the trial court was also trying a motion to suppress evidence in which the Defendant alleged that he was forcibly stopped, detained and searched without a warrant or other legal justification. In *State v. Scales*, 93-2003, p. 6, (La. 5/22/95), 655 So.2d 1326, 1331.cert.denied, 516 U.S. 1050, 116 S.Ct. 716 (1996), the supreme court stated:

> Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. *State v. Elliot*, 407 So.2d 659 (La.1981); *State v. Wilson*, 467 So.2d 503 (La.), *cert. denied*, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. *State v. Billiot*, 370 So.2d 539 (La.), *cert. denied*, 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979).

We find that the testimony elicited from Detective Hazelwood was not used to prove the character of the Defendant, but was clearly the knowledge of Detective Hazelwood, which would establish probable cause. This testimony was not evidence of a prior arrest or conviction, but described the circumstances leading to the

18

surveillance and ultimate apprehension and arrest of the Defendant. Accordingly, we find that a *Prieur* hearing was not required, and thus, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3:

In his final assignment of error, the Defendant argues that his sentence is excessive, arbitrary, capricious, and disproportionate based on the facts alleged and the crime charged. The Defendant's argument focuses on the trial court's ruling that he is a subsequent offender and that the enhanced sentence on count one is cruel, excessive and unusual. We have vacated the Defendant's sentence for count one, and thus, this argument is moot.

In count two, the Defendant was found guilty of conducting a financial transaction involving proceeds from a drug offense, a violation of La.R.S. 40:1049, which states in pertinent part, "E. Any person who is convicted of violating this Section shall be imprisoned for not more than ten years, with or without hard labor, or fined not more than ten thousand dollars, or both." The Defendant was sentenced to five years at hard labor.

This court has discussed the law regarding excessive sentences as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad

discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958.(alteration in original)

At sentencing, the trial court stated:

I note for the record, the pre-sentence investigation that I ordered upon conviction.

. . . .

I do have before me a thirty-six year old, and I do have the pre-sentence investigation that I've gone over. I do have the information not only from the pre-sentence investigation but from sitting through the trial and with the evidence produced about the amount of drugs that were available.

. . . .

With regards to the transactions involving the proceeds derived from drug activity, that's zero (0) to ten (10).

So this Court is bound by what the statute says. And this Court has considered all of the information in front of me with regards to Mr. Edwards' criminal history. This Court takes into consideration that he did plead guilty - - he had two (2) felony convictions on the same day.

. . . .

They also say that on September 28, 1995, his possession of cocaine case, that was under supervision or parole or whatever, was terminated unsatisfactorily.

. . . .

But with regards to the seriousness of this offense, and I do not believe that all people that engage in drug activity are stupid. I don't believe that. I know that there are no victimless crimes, and drug sale is not a victimless crime, as well.

As noted above, the Defendant does not make any specific arguments with regard to the excessiveness of this sentence on count two. Given the Defendant's

20

criminal history and status as revealed in his Pre-sentence Investigation Report, we cannot say that the Defendant's sentence of five years, one-half of the maximum sentence allowed by La.R.S. 40:1049, is excessive. Further, the Defendant did not receive a fine. Accordingly, we find that this portion of the assignment of error lacks merit.

## CONCLUSION:

The Defendant's conviction for possession of cocaine, greater than 28 grams, less than 200 grams within 1,000 feet of a drug free of a drug-free zone is vacated. Further, we vacate the Defendant's conviction and sentence for possession of more than 28 grams, but less than 200 grams of cocaine, second offense, and enter a conviction for the lesser offense of possession of more than 28 grams, but less than 200 grams of cocaine. The case is remanded to the trial court for re-sentencing on this conviction.

Additionally, we overturn the Defendant's conviction for transaction involving proceeds from a drug offense, as there is insufficient evidence to support the conviction.

**VACATED AND REMANDED IN PART, AND REVERSED IN PART.**

21