NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1469

STATE OF LOUISIANA

VERSUS

ANTHONY DAYE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO.11-102
HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

CONVICTIONS VACATED;
CONVICTION AFFIRMED; AND
SENTENCE VACATED AND
REMANDED WITH INSTRUCTIONS.

Anthony Daye
Louisiana State Prison
Angola, LA 70712
        DEFENDANT:  IN PROPER PERSON

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA  70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT-APPELLANT:**
　　**Anthony Daye**

**J. Phil Haney, District Attorney, Sixteenth Judicial District**
**Angela B. Odinet, Assistant District Attorney**
**St. Martin Parish Courthouse**
**415 Main Street**
**St. Martinville, LA 70582**
**(337) 394-2220**
**COUNSEL FOR THE STATE OF LOUISIANA**

**PAINTER, Judge.**

Defendant, Anthony Daye, appeals his convictions on three separate drug-related charges and the sentence of life imprisonment imposed after his adjudication as a fifth felony offender. We find that the evidence was insufficient to support his conviction on a transaction involving the proceeds from a drug offense (a violation of La.R.S. 40:1401(A)), and, accordingly, we reverse that conviction. We also find that Defendant's conviction on the responsive verdict of possession of marijuana must be reversed for double jeopardy reasons. We affirm the conviction for possession of marijuana, second offense. However, finding that the single sentence of life imprisonment imposed is indeterminate, we vacate the sentence and remand the matter to the trial court for resentencing.

## FACTS AND PROCEDURAL HISTORY

On August 10, 2010, Deputies Ben LaSalle and Wade Bergeron were following a vehicle when they saw Defendant jump out of it and start running. Deputy LaSalle saw that Defendant's right hand was underneath his shirt "as if he was concealing something." Deputy Bergeron got out of the car and chased Defendant as Defendant ran through a garage. Deputy Bergeron saw Defendant stop at a vehicle in the garage and appear to throw something beneath it. Deputy Bergeron stopped at the vehicle while Deputy LaSalle continued to chase Defendant. Defendant was apprehended by two other officers in the area and was quickly arrested by Deputy LaSalle. Pursuant to a search incident to arrest, Deputy LaSalle found $1,551.00 in cash in Defendant's pocket.

According to Deputy LaSalle, Defendant told him that he wanted to go to the narcotics office because he could give them information. Sergeant Jason Comeaux, one of the officers assisting at the scene, testified that Defendant told

them that he wanted to talk to them about assisting in large-scale narcotics investigations.

Before transporting Defendant to the narcotics office, Deputy LaSalle went to the garage where Deputy Bergeron was waiting. Deputy Bergeron notified Deputy LaSalle that he found a bag containing what he suspected to be marijuana and a hand rolled marijuana cigarette in the same area that Deputy Bergeron saw Defendant throw something. Once the evidence was seized, Defendant was transported to the narcotics office. After advising Defendant of his rights, Deputy LaSalle asked Defendant why he exited the vehicle and ran. Defendant replied, "I had some weed and didn't want to get caught with it. I knew ya'll were going to stop us." When Deputy LaSalle specifically asked Defendant if the bag of marijuana and marijuana cigarette located in the carport were his, Defendant answered, "Yes, that was for me." As for the money found on Defendant, Deputy LaSalle asked Defendant if he had a job. Defendant responded, "No, I just make a little hustle." Deputy LaSalle testified that based on his knowledge and experience as a narcotics agent in Iberia Parish, Defendant's statement meant that he sold drugs. Deputy LaSalle also testified that the $1,551.00 in cash found in Defendant's pocket consisted of the following denominations: eleven one dollar bills; six five dollar bills; nineteen ten dollar bills; and sixty-six twenty dollar bills.

Defendant was charged by bill of information with one count of possession of marijuana with the intent to distribute, a violation of La.R.S. 40:966(A)(1), and one count of a transaction involving proceeds from drug offenses, a violation of La.R.S. 40:1041.[1] Defendant pled not guilty to the charges. Thereafter, the State

---

[1] The bill of information erroneously cites La.R.S. 40:1049 instead of La.R.S. 40:1041. This error is harmless, however, since the State filed an amended bill of information with the correct statutory citation and since Defendant does not claim that he was misled by the erroneous citation of La.R.S. 40:1049. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d

2

filed an amended bill of information in which it charged Defendant with one count of possession with the intent to distribute marijuana, a violation of La.R.S. 40:966(A)(1); one count of a transaction involving proceeds from drug offenses, a violation of La.R.S. 40:1041(A); and one count of possession of marijuana, second offense,[2] a violation of La.R.S. 40:966(C).

The matter proceeded to trial, and on the first day, the State noted for the record that it had filed the amended bill adding the third count of possession of marijuana, second offense, and that Defendant needed to be formally arraigned on the amended bill. Defendant pled not guilty to the amended bill. After a two-day jury trial, Defendant was found guilty as follows: count one – guilty of the responsive verdict of possession of marijuana; count two – guilty as charged of transaction involving proceeds from drug offenses; and count three – guilty as charged of possession of marijuana, second offense. Both counsel waived polling of the jury. The State then filed a habitual offender bill charging Defendant with five prior felonies, and Defendant pled not guilty. The trial court found Defendant to be a fifth felony offender and following a sentencing hearing, sentenced Defendant to a single sentence of life imprisonment.

Defendant is now before this court asserting three assignments of error through counsel: 1) the evidence was insufficient to find Defendant guilty of count two, transaction involving proceeds from drug offenses; 2) the trial court erred in imposing a single sentence for three separate offenses; and 3) Defendant's conviction of both possession of marijuana and possession of marijuana, second offense, is a violation of double jeopardy. Defendant has also filed a pro se brief

---

1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, ___U.S. ____, 131 S.Ct. 932 (2011).

[2] The second offense charge resulted from a prior conviction unrelated to these proceedings.

3

alleging two assignments of error, both of which involve his right to confront the analyst who tested the marijuana in the present case.

## DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find that there is an error patent in that the sentence is indeterminate. Since Defendant raised this as error, it is discussed below.

Additionally, the record does not indicate that a sentence was imposed on count one, possession of marijuana; however, since we are vacating this conviction, no sentence need be imposed.

### *Sufficiency of the Evidence*

In his first assignment of error, Defendant contends that there was insufficient evidence to support his conviction on count two, a transaction involving the proceeds from a drug offense, a violation of La.R.S. 40:1041(A). Defendant argues that the State limited its charge to the specific subsection of La.R.S. 40:1041 cited in the bill of information - subsection A - and that the evidence was not sufficient to convict Defendant of that subsection.

In the first bill of information filed against Defendant, the State charged Defendant with committing a transaction involving the proceeds from a drug offense without specifying a violation of any subsection in particular:

> Count #2: ON OR ABOUT AUGUST 30, 2010, IN THE PARISH OF IBERIA, ANTHONY DAYE DID KNOWINGLY OR INTENTIONALLY COMMIT R.S. 40:1049 TRANSACTION INVOLVING PROCEEDS FROM DRUG OFFENSES, by any person knowingly or intentionally conducting a financial transaction involving proceeds known to be derived from a violation of R.S. 40:966 et seq.

4

Louisiana Revised Statutes 40:1041 sets forth four different ways in which the offense may be committed:

A. It is unlawful for any person knowingly or intentionally to conduct a financial transaction involving proceeds known to be derived from a violation of R.S. 40:966 et seq. when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law.

B. It is unlawful for any person knowingly or intentionally to give, sell, transfer, trade, invest, conceal, transport, maintain an interest in, or otherwise make available anything of value known to be for the purpose of committing or furthering the commission of any violation of R.S. 40:966 et seq.

C. It is unlawful for any person knowingly or intentionally to direct, plan, organize, initiate, finance, manage, supervise, or facilitate the transportation or transfer of proceeds known to be derived from any violation of La.R.S. 40:966 et seq.

D. It is unlawful for any person to knowingly or intentionally receive or acquire proceeds derived from any violation of R.S. 40:966 et seq., or to knowingly or intentionally engage in any transaction involving proceeds from any such violations. The provisions of this Section shall not include any transaction between an individual and his attorney, that is necessary to preserve that individual's right to representation by counsel, as guaranteed by the Sixth Amendment of the United States Constitution, and Article I Section 13 of the Constitution of Louisiana. However, this shall not affect the right of the state to seek and obtain forfeiture of any proceeds derived from a violation of R.S. 40:966 et seq., as provided by R.S. 40:2601 through 2622.

Although the State did not specify a subsection of La.R.S. 40:1041 in the first bill of information, it changed the wording when it filed the amended bill of information to specify a particular subsection:

Count #2: R.S. 40:1041A TRANSACTIONS INVOLVING PROCEEDS FROM DRUG OFFENSES, IN THE PARISH OF IBERIA, Anthony Daye, on or about August 30, 2010, did knowingly or intentionally conduct a financial transaction involving proceeds known to be derived from a violation of R.S. 40:966 et seq. when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law.

Defendant contends that the State limited itself to proving subsection A by citing only that subsection in the bill of information, thereby failing to conjunctively charge the offense as required by La.Code Crim.P. art. 480, which provides:

> If an offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, two or more of such acts, means, intents, or results may be charged conjunctively in a single count of an indictment, or set forth conjunctively in a bill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction.

In addition to choosing to charge Defendant with only subsection A, Defendant contends that the State failed to object when the trial court instructed the jury on that subsection only. The trial court instructed the jury as follows:

> Under Count 2, it is unlawful for any person knowingly or intentionally to conduct a financial transaction involving proceeds known to be derived from a drug offense when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds known to be derived from such violation, or to avoid a transaction reporting requirement under state or federal law.

> Thus, in order to find the defendant guilty as charged under Count Number 2, you must find that the defendant knowingly or intentionally conducted a financial transaction with proceeds known to be derived from a drug offense, when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of proceeds known to be derived from such violation, or to avoid a transaction reporting requirement.

In making his argument, Defendant attempts to distinguish this court's opinion in *State v. V.L.G.*, 11-634, 2011 WL 6077831, wherein this court found no merit to an insufficiency of the evidence claim similar to the present Defendant's claim. The defendant in *V.L.G.* argued that the State limited itself to charging the defendant with committing an aggravated rape wherein the victim was prevented from resisting "by threats of great and immediate bodily harm, accompanied by apparent power of execution." La.R.S. 14:42(2). According to the defendant in

6

*V.L.G.*, the State did not conjunctively charge the defendant in accordance with La.Code Crim.P. art. 480. Instead, the State specifically charged that the victim's lack of consent was due to the defendant's force. Additionally, the defendant in *V.L.G.* argued that the jury instructions "included three recitations relating to force or threats of force." *V.L.G.*, WL 6077831, at *3. Claiming the element of force was not proven beyond a reasonable doubt, the defendant in *V.L.G.* asserted that the evidence was insufficient to convict him of aggravated rape.

Although the court in *V.L.G.* agreed that the evidence was insufficient to prove that the victim was prevented from resisting V.L.G.'s acts by threats of great and immediate bodily harm accompanied by apparent power of execution as alleged in the indictment, this court found that the real issue was notice:

> We agree there was insufficient evidence to prove D.C. was prevented from resisting the Defendant's acts by threats of great and immediate bodily harm accompanied by apparent power of execution as alleged in the indictment. This court's inquiry should not end here. The actual issue in the case at bar is whether the Defendant was adequately informed of the charges against him.
>
> The Defendant did not file a motion for bill of particulars nor did he allege, pre-trial, that the indictment did not provide adequate notice of the charges. The indictment clearly indicated D.C. was under the age of thirteen at the time the offense at issue were committed, and the Defendant was fully informed of the facts the State intended to show on the charges of aggravated rape. Further, there was no objection to the sufficiency of the indictment at trial.

*Id.* at p. 7 (citations omitted). Thus, the court found V.L.G.'s insufficiency of the evidence assignment lacked merit.

Defendant in the present case argues that *V.L.G.* is distinguishable because the indictment filed against V.L.G. indicated in several places that the victim was under the age of thirteen, another way in which the victim's lack of consent could be proved under La.R.S. 14:42; but, in the present case, Defendant argues that there is nothing in the charging instrument to notify Defendant that another

7

subsection of La.R.S. 40:1041 could be used. Defendant also attempts to distinguish *V.L.G.* because in that case, the trial court instructed the jury on four different ways aggravated rape could be committed, including the victim's age, but, in the present case, the trial court instructed the jury as to subsection A only.

We find these attempts to distinguish *V.L.G.* without merit because the prosecutors in both this case and in *V.L.G.* expanded the charging instrument by making certain statements in both voir dire and arguments to the jury. The prosecutor in *V.L.G.* informed prospective jurors during voir dire that one of the aggravating factors at issue was the fact that the victim was under the age of thirteen. Also, during closing argument, the prosecutor asserted that it had proven that the victim was under the age of thirteen when raped by V.L.G. In the present case, the prosecutor stated the following during voir dire:

> Mr. Daye is also charged with proceeds involving transactions from drug offenses. I have to prove to you beyond a reasonable doubt that charge, that he possessed money. And that that money that he possessed was the proceeds from illegal drug transactions. On that same date this gentleman possessed money and that the money possessed was derived from drug transactions.

Also, during opening and closing argument, the State referred to the money found on Defendant as "drug proceeds" and "proceeds from illegal drug transactions." This language tracks language used in subsection D of La.R.S. 40:1041:

> D. It is unlawful for any person to knowingly or intentionally receive or acquire proceeds derived from any violation of R.S. 40:966 et seq., or to knowingly or intentionally engage in any transaction involving proceeds from any such violations.

Considering Defendant's failure to object to the State's statement in voir dire and argument, this court concludes that Defendant was put on notice that the State was proceeding under subsection D.

The fourth circuit addressed a very similar issue in *State v. Williams*, 02-260 (La.App. 4 Cir. 3/12/03), 842 So.2d 1143, *writ denied*, 03-1991 (La. 1/16/04), 864

8

So.2d 625, *and writ denied*, 06-1583 (La. 3/23/07), 951 So.2d 1096, and concluded that the real issue was whether the defendant was notified of the charges against him rather than what was set forth in the charging instrument. In *Williams*, the bill of information charged Williams with second degree kidnapping under subsection B(1) of La.R.S. 14:44.1. Although the evidence was not sufficient to find Williams guilty of B(1), the fourth circuit found that the evidence was sufficient to find Williams guilty of another subsection of the second degree kidnapping statute – B(3). Thus, the court was faced with deciding "whether the defendant's conviction can be upheld based upon subsection B(3) even though the subsection alleged in the bill of information was subsection B(1)." *Id.* at 1147. Finding that Williams' conviction could be upheld, the court noted that Williams' attorney was present at a motion to suppress hearing held five months prior to trial, at which evidence to support subsection B(3) was introduced. The court also noted that it was "apparent that defense counsel had prepared his case based upon the assumption that the defendant had been charged under subsection B(3), not B(1) as alleged in the bill of information." *Id.* at 1148. Williams' defense counsel actually moved for a directed verdict at the conclusion of the case, arguing that he had arrived that morning under the belief that the State was proceeding under B(3) only to realize at some point that the bill of information charged Williams under B(1). Thus, the fourth circuit concluded that "this is not a case where counsel had been misled as to what evidence the State was planning to present and was unprepared to meet the allegations in the bill of information." *Id.*

This court finds that the State's assertions to the jury during voir dire and arguments were sufficient to put Defendant on notice that it was proceeding under a different subsection, namely subsection D. As set forth above, subsection D of La.R.S. 40:1041 provides in pertinent part:

9

> It is unlawful for any person to knowingly or intentionally receive or acquire proceeds derived from any violation of R.S. 40:966 et seq., or to knowingly or intentionally engage in any transaction involving proceeds from any such violations.

Under this subsection, the State was simply required to prove that Defendant knowingly and intentionally received proceeds derived from a violation of La.R.S. 40:966-971.

> The standard for reviewing the sufficiency of the evidence is as follows:
>
>> "[T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Desoto*, 07-1804, p. 7 (La. 3/17/09), 6 So.3d 141, 146.

In his brief, Defendant argues that the State failed to prove that the money found on him was derived from the sale of a controlled dangerous substance:

> At the time of the stop in question, the officers did not observe any possible drug transaction although they were riding around looking at different targets. They chased Mr. Daye because he fled from a car they were following for a possible traffic violation, with his hand beneath his shirt. . . . Additionally, none of the officers testified that the marijuana introduced at trial was packaged in a manner for individual sale and the jury actually declined to return a verdict of guilty of possession with the intent to distribute marijuana – instead, they returned the responsive verdict of simple possession. The presence of money with an illegal substance alone does not prove that the money was derived from the sale of an illegal substance. Likewise, even an admission that a defendant makes a little hustle does not prove beyond a reasonable doubt that the money seized from his person was obtained from selling drugs. Mr. Daye was not asked how he obtained the money in his pocket; instead, he was asked if he had a job. He was not observed making a drug deal, the drugs found underneath the car were not packaged for individual sale, there was no marked money found on Mr. Daye and, there was no testimony introduced that any inference could be drawn from the denominations of the money seized from Mr. Daye. The State failed to prove that the money seized from Anthony Daye was derived from distributing illegal drugs.

In two cases involving La.R.S. 40:1041, this court required direct evidence connecting the money found on a defendant with an actual drug transaction witnessed by the police or an informant. In *State v. Edwards*, 06-850 (La.App. 3 Cir. 6/13/07), 963 So.2d 419, this court found that the evidence was insufficient to convict Edwards of conducting a transaction involving proceeds from a drug offense when there was no money seen changing hands, and the $305.00 found in Edwards' pocket was not an unusually large amount of cash. The court made this determination despite the fact that the police received information from a confidential informant "for about ten years which indicated that the defendant was transporting drugs from Baton Rouge, Louisiana to New Iberia, Louisiana for street sale." *Id.* at 421. The police also witnessed "what appeared to be the Defendant making a few narcotics exchanges and watched him store narcotics under the house and in the pipe of a metal clothesline." *Id.* Like the present Defendant, Edwards was arrested after fleeing the scene. The officers seized $305.00 from Edwards, but no drugs or weapons were found on Edwards' person. The officers in *Edwards* did, however, seize crack cocaine from inside the metal clothesline pipe and from underneath the house – both places in which Edwards was observed hiding narcotics. Faced with these facts, this court reversed Edwards' conviction, stating, "because no money was seen changing hands and because $305.00 is not an unusually large amount of cash, we find that the evidence was insufficient to find the Defendant guilty of this charge." *Edwards*, 963 So.2d at 426.

Relying on *Edwards*, this court again found insufficient evidence in *State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, ___ U.S. ___ , 131 S.Ct. 932 (2011). In *Johnlouis*, the police discovered a large bundle of money in Johnlouis' pocket and

11

two rocks of crack cocaine in Johnlouis' car. A police officer testified that he did not know how Johnlouis got the money but that Johnlouis said he was not employed at that time. The court in *Johnlouis* noted that a photograph of the cash found on Johnlouis was admitted into evidence and that there was "well in excess of $1,000.00 dollars." *Id.* at 1159 n.2. Because "there was no testimony regarding money changing hands and no testimony regarding the amount of cash on the Defendant's person," this court found that the evidence was insufficient to convict Johnlouis of transactions involving proceeds derived from drug offenses. *Id.* at 1159.

In the present case, as in both *Edwards* and *Johnlouis*, there is no evidence that anyone saw money changing hands. Furthermore, even though the jury heard testimony regarding the denominations of the cash found on Defendant, no testimony was presented as to any inference that could be drawn from these denominations. The money seized from Defendant was $1,551.00. The money seized from Johnlouis was "well in excess of $1,000.00 dollars." Thus, the amount of money seized in this case is not enough to distinguish it from *Edwards* or *Johnlouis*.

The State argues that there was sufficient evidence to find that the money possessed by Defendant was derived from a drug transaction, because the officers found money on Defendant and found illegal drugs in close proximity to Defendant. According to *Edwards* and *Johnlouis*, however, this is not sufficient to prove that the money was derived from a drug transaction. The State additionally contends that Defendant admitted that the money in his possession was from "making a little hustle." This statement is not correct. According to Deputy LaSalle, the Defendant said he "made a little hustle" when asked if he had a job.

12

Although Defendant's statements to police that he wanted to help them with large-scale drug transactions and that he made a "little hustle" appear to indicate that Defendant has been involved in drug transactions, in light of this court's opinions in *Edwards* and *Johnlouis*, this evidence is not sufficient to show that the money found on Defendant was derived from a drug transaction. Thus, we find that the evidence was insufficient to support Defendant's conviction and hereby vacate the conviction on count two, a transaction involving proceeds from a drug offense.

*Double Jeopardy Claim*

By this assignment of error, Defendant alleges that he was subjected to double jeopardy when he was convicted of the offense of possession of marijuana, second offense, and the responsive verdict of possession of marijuana, as the two charges arose out of the same criminal episode and were based upon the same marijuana.

In *State v. Archield*, 09-1116, p. 4 (La.App. 3 Cir. 4/7/10), 34 So.3d 434, 438, *writ denied*, 10-1146 (La. 5/20/11), 63 So.3d 972, this court set forth the analysis for reviewing a double jeopardy claim:

> Both the United States and Louisiana Constitutions prohibit double jeopardy; the imposition of multiple punishments for a single criminal act. *See* U.S. Const. amend. V; La. Const. art. 1, § 15. *See also,* La.Code Crim.P. art. 591. Louisiana courts use two methods, the "Blockburger Test" and the "same evidence test", to determine whether double jeopardy exists. *State v. Williams,* 07–931 (La.2/26/08), 978 So.2d 895.
>
> In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States Supreme Court interpreted the Fifth Amendment's prohibition of double jeopardy and enunciated the following test to be employed by the federal courts, as follows:
>
> > The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

In interpreting Article 1, Section 15 of the Louisiana Constitution, Louisiana courts have also used the broader "same evidence test" which provides:

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.

*State v. Cotton,* 00–850, p. 5 (La.1/29/01), 778 So.2d 569, 573 quoting *State v. Steele,* 387 So.2d 1175, 1177 (La.1980).

Defendant argues, and we agree, that a violation of double jeopardy occurred because the same evidence (i.e., the same marijuana) was used to convict him of both possession with the intent to distribute marijuana and possession of marijuana, second offense. In his brief, Defendant states:

> In the case at bar, the Appellant was charged with possession with the intent to distribute marijuana found under a car and with possession of marijuana, second offense for this same marijuana. It matters not that a small portion of the marijuana was contained within a blunt or that the lab listed it and weighed the blunt separate from the other marijuana, as all of the marijuana seized on August 30, 2010, was in the same bag. No one testified that the evidence was seized from different locations or that it was even bagged separately. When asked what was found when they searched the carport, Agent LaSalle testified "A bag containing suspected marijuana and also like a hand rolled marijuana cigarette." (II, p. 264). When questioned further about the location where the contraband was discovered, Deputy Bergeron referred to the contraband in the singular – "it." (II, p. 293). There were not two separate and distinct acts. The marijuana in the bag was used to prove both that Mr. Daye possessed it with the intent to distribute it (which the jury declined to find with regard to the intent to distribute element) and to also prove he possessed it, having previously been convicted of possession of marijuana. The same conduct which formed the basis of the offense of possession with the intent to distribute marijuana, on which the jury returned the responsive verdict of possession of marijuana, was based on the same conduct which formed the basis of the possession of marijuana, second offense.

14

In *City of Baton Rouge v. Ross*, 94-695, p. 17 (La. 4/28/95), 654 So.2d 1311, 1322, the supreme court described the "same evidence" test as a focus "upon the actual physical and testimonial evidence necessary to secure a conviction." The supreme court further stated that "under the 'same evidence' test our concern is with the 'evidential focus' of the facts adduced at trial in light of the verdict rendered, *i.e.* how the evidence presented goes to satisfy the prosecution's burden of proof." *Id.* at 1322 (footnote omitted) (citing *State v. Miller*, 571 So.2d 603, 606 (La.1990) and *State v. Powell*, 598 So.2d 454, 470 (La.App. 2 Cir.), *writ denied*, 605 So.2d 1089 (La.1992)).

In the present case, the bill of information does not distinguish between the marijuana used to charge Defendant with possession with the intent to distribute marijuana (for which the jury returned a responsive verdict of possession of marijuana) and the marijuana used to charge Defendant with possession of marijuana, second offense. At trial, however, the State indicated that the "marijuana" relied upon for each offense was different. In its opening statement, the State told the jury that "[o]n the date that [Defendant] possessed this marijuana *blunt*[,] he was a second-offender under the law because of his prior conviction." The State went on to argue to the jury that Defendant "fled from the officers because he possessed that marijuana, that he had that *bag* of marijuana with an intent to sell . . . ." In closing argument, the State again argued that Defendant "intended to distribute that *bag* of marijuana." Finally, the State introduced the "bag of marijuana" and the "blunt of marijuana" in two different exhibits – State Exhibit One is the bag of marijuana and State Exhibit Two is a bag with "blunt of marijuana." Defense counsel alleges that the marijuana seized in the instant case was in the same "bag," and the testimony introduced at trial is unclear as to whether the blunt of marijuana was contained within the bag when the marijuana

15

was found. Deputy LaSalle testified that he located a "bag containing suspected marijuana and also like a hand rolled marijuana cigarette" under the carport. However, it is clear from the record that Defendant only made one throwing motion.

In support of his double jeopardy argument, Defendant contends that his case is similar to *State v. Falcone*, 383 So.2d 1243 (La.1980). In *Falcone*, the supreme court found that double jeopardy barred Falcone from a second prosecution in Washington Parish for the possession with the intent to distribute the same marijuana for which Falcone had been previously convicted in Livingston Parish. In reaching this decision, the court noted that the bill of information filed in Livingston Parish specifically charged Falcone with "a continuous offense which involved possession and transportation of marijuana throughout several parishes." *Id.* at 1245. Concluding that the state could not prosecute Falcone for possession of the marijuana in Washington Parish since Falcone had been prosecuted in Livingston Parish for marijuana in both Livingston and Washington Parishes, the supreme court specifically stated that it would not "reach the issue of whether the state *might* have been able to prosecute these defendants for a separate chargeable offense in Washington Parish had the Livingston prosecution not included the marijuana possessed in Washington Parish . . . ." *Id.*

We find the present case to be analogous to *State v. LeBlanc*, 618 So.2d 949 (La.App. 1 Cir. 1993), *writ denied*, 95-2216 (La. 10/4/96), 679 So.2d 1372. In that case, the first circuit found that LeBlanc's convictions for possession in excess of 400 grams of cocaine and distribution of the same cocaine violated his constitutional protection against double jeopardy. In making this finding, the court stated:

16

In the instant case, the defendant was charged with possession in excess of 400 grams of cocaine and distribution of the same cocaine. He was found guilty of possession in excess of 400 grams of cocaine and of attempted distribution of cocaine. The state introduced evidence that the defendant attempted to sell an undercover officer a package of cocaine in excess of 400 grams. The same package of cocaine from that transaction was used by the state as evidence to convict the defendant of possession of cocaine in excess of 400 grams. No other cocaine was introduced into evidence; nor was there any other evidence presented about another drug transaction or another time that the defendant possessed cocaine. The defendant's convictions for attempted distribution of cocaine and possession of cocaine in excess of 400 grams arose of the same transaction and the same package of cocaine was used as the evidence for both convictions.

*Id.* at 957.

Accordingly, this court finds that the evidence used to convict Defendant of the first count of possession of marijuana and the evidence used to convict Defendant of possession of marijuana, second offense, was the "same evidence" for double jeopardy purposes. The bill of information does not distinguish between the marijuana used to charge both offenses, and the actual physical and testimonial evidence do not support a finding that the marijuana used to find Defendant guilty on both counts were two completely separate findings. Having found a violation of double jeopardy, we reverse the conviction of the less severely punishable offense, *i.e.* count one, possession of marijuana. *Id.*, citing *State ex rel. Adams v. Butler*, 558 So.2d 552 (La.1990). The conviction for the more severely punishable offense of possession of marijuana, second offense is affirmed.

*Sentencing Claim*

By this assignment of error, Defendant alleges that resentencing is required because the trial court failed to impose a sentence on each count and failed to specify on which count the enhanced sentence was being applied. Even though we have vacated one of Defendant's convictions for insufficient evidence and vacated another for double jeopardy reasons, we find merit in this assignment or error.

17

On the same date of Defendant's convictions, the State filed a habitual offender bill charging Defendant with five prior felonies and listing both of the felonies for which Defendant was convicted by the jury in this case – possession with the intent to distribute, second offense; and transactions involving proceeds from drug offenses. Although the State did not specifically allege which count or counts it was seeking to enhance, Defendant concedes that the State sought enhancement of both felony convictions. Defendant pled not guilty to the habitual offender bill, but the trial court found Defendant to be a fifth felony offender, and after a sentencing hearing, it sentenced Defendant to a single sentence of life imprisonment.

The State argues that if this court finds error in the sentence imposed, there is no need to vacate the life sentence imposed and remand for resentencing. Rather, the State argues, this court should "simply remand the matter for clarification from the trial court as to which felony sentence was enhanced, to which the life sentence applied." The State contends that the trial court should then simply impose a sentence on the other count.

In *State v. Webster,*[3] 95-605, p. 9 (La.App. 3 Cir. 11/2/95), 664 So.2d 624, 630, this court addressed an issue similar to the one in the present case:

> By these assignments of error, the defendant contends the trial court erred in failing to specify which of the four convictions was being enhanced at sentencing and in failing to sentence him on the additional three counts within a reasonable amount of time.
>
> The defendant notes that the trial court did not specify which armed robbery conviction was being enhanced. Nor did the court sentence the defendant on the remaining three convictions. The defendant further contends the trial court should be divested of jurisdiction on the three remaining counts as he will not be sentenced on them within a reasonable amount of time.

---

[3] At the time of this decision, it was permissible to enhance only one of multiple convictions arising out of a single criminal episode. However, the supreme court has since held that La.R.S. 15:529.1 does not prohibit enhancing multiple sentences obtained the same date arising out of a single criminal episode. *State v. Shaw*, 06-2467 (La. 11/27/07), 969 So.2d 1233.

We agree, that the trial court erred in that the record does not reveal which of defendant's four armed robbery convictions was being enhanced. Additionally, the trial court should have imposed a separate sentence on each of the three remaining convictions. Therefore, defendant's sentence is indeterminate as he was convicted of four counts of armed robbery and only a single sentence was imposed. See *State v. Bessonette*, 574 So.2d 1305 (La.App. 3 Cir.1991); La.Code Crim.P. art. 879. Accordingly, defendant's sentence will be vacated and the case remanded to the trial court for clarification as to which count is being enhanced and for imposition of separate sentences on the remaining three counts. See *State v. Parker*, 593 So.2d 414 (La.App. 1 Cir.1991).

The life sentence imposed upon Defendant is hereby vacated as indeterminate when rendered, and the case is remanded for resentencing on the remaining conviction for count three. We find that resentencing is necessary despite the fact that only one conviction remains. The State sought enhancement under the non-mandatory sentencing provision for a fourth felony offender. The trial judge has discretion to impose a sentence of twenty years to life. Thus, the fact that two of Defendant's convictions <u>are</u> being vacated may be considered by the trial judge when imposing the sentence on the remaining felony, possession of marijuana, second offense.

*Confrontation Clause Claim*

In his first pro se assignment of error, Defendant claims that his Sixth Amendment confrontation rights were violated by the State's introduction of the testimony of a surrogate analyst who did not perform the lab testing on the marijuana introduced in this case and who did not sign the lab certification report. As authority, Defendant cites the United States Supreme Court case *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009) and subsequent cases addressing this confrontation clause issue. Because defense counsel stated for the record that she did not object to the surrogate's testimony, Defendant is precluded from now raising this issue on appeal.

Before jury selection, the State informed the trial court that the forensic chemist who actually tested the marijuana in this case, Bryant Jones, was no longer with the Acadiana Crime Lab. According to the State, Mr. Jones had moved to a crime lab in Texas. The State informed the trial court that it had spoken with defense counsel, and defense counsel had no objection to Kevin Ardoin, the Director of Acadiana Crime Lab, testifying in lieu of Mr. Jones. Defense counsel agreed with the State's assertion. The State described Mr. Ardoin's role at the Acadiana Crime Lab as follows:

> Kevin Ardoin, who is the Director of Acadiana Crime Lab and who is also a forensic chemist who tests controlled substances at the lab, oversees the testing of controlled substances at the lab, does peer review of employees who do testing on controlled substances. His name, at this time, is stamped on top of the lab report.

In *State v. Marcantel*, 98-825 (La.App. 3 Cir. 12/22/99), 756 So.2d 366, *writ denied*, 00-208 (La. 8/31/00), 766 So.2d 1274, this court found that Marcantel waived his right to confront the victim by stipulating to the victim's testimony via closed-circuit television. This court reasoned, "It is well-settled that this right is waivable." *Id.* at 373. Since Marcantel waived his right to confront the victim, this court stated that he could not raise it for the first time on appeal.

Defendant in the present case waived his right to confront Mr. Jones, the analyst who tested the marijuana in the present case, by agreeing to allow Mr. Ardoin to testify in lieu of Mr. Jones. Consequently, Defendant is precluded from now raising this issue on appeal.

*Ineffective Assistance of Counsel Claim*

In this pro se assignment, Defendant alleges that his trial counsel was ineffective for failing to consult with him before she agreed to the testimony of Mr. Ardoin in lieu of the testimony of Mr. Jones. Defendant contends that had his counsel objected to Mr. Ardoin's testimony, the trial court would have halted all

20

proceedings until the matter was resolved. Additionally, Defendant claims that his trial counsel could have questioned Mr. Jones as to his educational background, training, and experience, as well as questioned Mr. Jones as to the procedure he followed in performing the testing in this case. Finally, Defendant argues that his trial counsel could have questioned Mr. Jones as to why he did not perform a fingerprint analysis as requested by Deputy LaSalle.

Defendant also claims that his counsel's performance was deficient because she failed to discredit Mr. Ardoin's testimony regarding the lack of fingerprint testing in this case. Defendant alleges that Mr. Ardoin testified that the lab did not perform fingerprint testing on the bag of marijuana submitted by Deputy LaSalle because fingerprint testing was not requested. Defendant contends that his counsel should have impeached Mr. Ardoin's testimony by introducing the lab report showing that fingerprint testing was requested. This evidence, Defendant claims, would have discredited Mr. Ardoin as an expert witness and affected the jury's verdict.

This court has stated the following regarding the appropriateness of reviewing an ineffective assistance of counsel claim on appeal:

> The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. If this court considers a claim of ineffective counsel on appeal, Defendant must satisfy a two-part test. He must first show that counsel's performance was deficient and next, that the deficiency prejudiced him.

*State v. Teno*, 12-357, p. 10 (La.App. 3 Cir. 11/7/12), 101 So.3d 1068, 1075 (citations omitted).

The record is not sufficient to determine whether Defendant's trial counsel was ineffective for agreeing to the testimony of Mr. Ardoin in lieu of the testimony

21

of Mr. Jones without first consulting Defendant. Determination of this issue requires testimony from defense counsel as to why she made such a decision. Thus, this must be relegated to post-conviction relief where an evidentiary hearing may be held on this issue.

As for Defendant's claim that his counsel was ineffective for failing to impeach Mr. Ardoin regarding the lack of fingerprint testing, we find that this claim has no merit. Defendant contends that when asked about fingerprint testing by defense counsel, Mr. Ardoin testified that no fingerprint testing was performed but that fingerprint testing would have been performed, if it had been requested. Defendant avers that a competent counsel would have used the "Request for Scientific Analysis" submitted by Deputy LaSalle to show the jury that fingerprint testing was, in fact, requested. The introduction of the analysis request, Defendant claims, would have impeached Mr. Ardoin and discredited him as an expert witness.

Defendant has failed to show that his counsel's introduction of the request for analysis would have discredited Mr. Ardoin's testimony and affected the jury's verdict. First, the jury heard Deputy LaSalle testify that he submitted the marijuana for "handprint" analysis. The "Request for Scientific Analysis" was admitted into evidence as State Exhibit Eight. The request reflects that chemical, DNA and fingerprint testing was requested. Although not discussed at trial, it appears from a review of State Exhibit Eight that the request for DNA and fingerprint testing is crossed out. In the request for analysis attached to the Defendant's pro se brief, however, the request for DNA and fingerprint testing is not crossed out. Thus, it is questionable whether fingerprint testing was actually requested in this case. Regardless, the jury was made aware of the fingerprint

22

testing issue through Deputy LaSalle's testimony and the introduction of State Exhibit Eight.

Secondly, the introduction of the request for analysis during Mr. Ardoin's testimony would not have discredited Mr. Ardoin's testimony. When questioned by defense counsel regarding fingerprint testing, Mr. Ardoin testified that fingerprint testing was not done in this case because it is not standard practice to perform fingerprint testing in drug cases:

A: No. For drug cases we do not do fingerprinting.

. . . .

Q: Has that been a standard of practice?

A: It's been a standard of practice simply because we, with the volume of evidence with our aggravated crimes and violent crimes, we chose to do those when it's necessary or requested. We get quite a few drug cases, an enormous volume, so we don't do it on the drug cases.

Q: Who would do fingerprinting then on the bag?

A: That would be the agency if they did fingerprinting.

Mr. Ardoin did not testify, as Defendant claims, that fingerprint testing was not requested in this case. Thus, the introduction of the Request for Scientific Analysis by defense counsel during Mr. Ardoin's testimony would not have impeached Mr. Ardoin.

Accordingly, Defendant's ineffective assistance of counsel claim regarding his counsel's agreement to allow Mr. Ardoin to testify in lieu of Mr. Jones is relegated to post-conviction relief. However, Defendant's claim that his counsel was ineffective for failing to impeach Mr. Ardoin with the "Request for Scientific Analysis" document has no merit.

23

**DECREE**

Defendant's conviction for a transaction involving drug proceeds is vacated for insufficient evidence. Defendant's misdemeanor conviction for possession of marijuana is vacated as we found it to be a violation of double jeopardy. Defendant's conviction for possession of marijuana, second offense, however, is affirmed. The single sentence of life imprisonment imposed by the trial court after Defendant was adjudicated a fifth felony offender is vacated as indeterminate, and the case is remanded for resentencing.

Finally, Defendant's claim that his counsel was ineffective for agreeing to the testimony of Mr. Ardoin in lieu of Mr. Jones without first consulting with the Defendant is relegated to post-conviction relief.

**CONVICTIONS VACATED; CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.